**Lois STONER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1307.**

United States Court of Veterans Appeals.

Oct. 8, 1993.

Peggy H. Cook, Birmingham, AL, was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Adrienne Koerber were on the pleadings, Washington, DC, for appellee.

Before FARLEY, IVERS and STEINBERG, Judges.

IVERS, Judge:

Lois Stoner, the widow of veteran Robert P. Stoner, appeals an April 8, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for the cause of the veteran's death. *B. Lois Stoner in the Case of Robert P. Stoner,*

BVA 91–12071 (Apr. 8, 1991) [hereinafter *"Stoner"*]. The Secretary has filed a motion for summary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court vacates the April 1991 decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The veteran served in the United States Army from January 21, 1944, to February 11, 1946. *See* R. at 29, 68. Following his separation from service, at some point which is not apparent from the record on appeal, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) granted service connection for traumatic arthritis of the right knee that was reinjured by an in-service training accident (*see* R. at 68) and for a right inguinal hernia (*see* R. at 54). Continuing problems with the right knee eventually resulted in a right above-the-knee amputation in 1987. R. at 42, 70. The veteran received service connection for the right above-the-knee amputation. R. at 54, 61. On February 28, 1990, the veteran was admitted to the Montgomery, Alabama, VA Medical Center (MC) with complaints of increasing pain in his right stump area. R. at 46. On the same day or very soon thereafter, after X-rays revealed a metastatic disease in his right pelvis, the veteran underwent a prostate biopsy. *Ibid.* On March 19, 1990, the veteran died. R. at 45–46; Supplemental R. at 1.

On April 12, 1990, the veteran's widow, appellant in the instant appeal, filed a VA Form 21–534 (Application for Dependency and Indemnity Compensation or Death Pension by Surviving Spouse or Child). *See* R. at 54. On July 13, 1990, the RO denied service connection for the cause of death. R. at 55. On July 30, 1990, the RO sent appellant notification of its denial of service connection for the cause of death. R. at 56. On April 8, 1991, the BVA affirmed the denial of service connection for the cause of death. *Stoner,* BVA 91–12071, at 5.

## II. ANALYSIS

■ The surviving spouse of a veteran who has died after December 31, 1956, may file a claim for dependency and indemnity compensation (DIC) benefits. 38 U.S.C.A. §§ 1310, 1311 (West 1991). Under section 1310(a),

> When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay [DIC] to such veteran's surviving spouse, children, and parents. The standards and criteria for determining whether or not a disability is service-connected shall be those applicable under chapter 11 of this title.

A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1992). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1992). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1992). Therefore, the issue is whether a service-connected disability was a principal or contributory cause of the veteran's death.

In her Notice of Disagreement with the RO's July 1990 denial of service connection for the cause of the veteran's death, appellant stated: "It is my contention that the sepsis caused by [the veteran's] service[-]connected disability was so overwhelming that it had so weakened his body that he was unable to withstand the effects of other diseases." R. at 57. The veteran was service-connected for a right inguinal hernia and a right above-the-knee amputation. See R. at 54. In her September 1990 VA Form 1–9 (Appeal to BVA), appellant stated that "the problems that [the veteran] had with his service[-]connected disability resulting in the amputation of his leg

and subsequent infection certainly was [sic] a contributing factor to his death." R. at 65. However, appellant does not possess the requisite medical expertise to opine as to the medical cause of death. See Espiritu v. Derwinski, 2 Vet.App. 492, 494 (1992) (lay witness is generally not capable of making statements requiring medical knowledge "such as a diagnosis as to the cause of a veteran's death."); cf. Moray v. Brown, 5 Vet.App. 211, 214 (1993) (lay assertions of medical causation will not suffice to reopen a claim); Barfield v. Brown, 5 Vet.App. 8, 9 (1993) (lay witness was not capable of opining "as to the medical cause of her husband's death"); Grottveit v. Brown, 5 Vet.App. 91, 93 (1993) ("lay assertions of medical causation cannot constitute evidence to render a claim well grounded").

In this case, the death certificate stated that the immediate cause of the veteran's death was sepsis. R. at 45. (Sepsis is "a toxic condition resulting from the spread of bacteria or their products from a focus of infection." WEBSTER'S MEDICAL DESK DICTIONARY 648 (1986) [hereinafter "WEBSTER'S"].) The veteran's death certificate did not list an underlying cause of death. See R. at 45. However, the death certificate listed metastatic cancer of the prostate under "[o]ther significant conditions contributing to death but not resulting in the underlying cause given." Ibid. The veteran's prostate cancer was not rated as service connected. Moreover, except for appellant's statements regarding a causal link between the veteran's right above-the-knee amputation and sepsis, there is no evidence that the immediate cause of death resulted from either of the veteran's previously service-connected conditions. Although a May 1987 VA discharge summary indicates that the veteran suffered from a "[c]hronically infected right total knee arthroplasty," the examiner specifically noted that the veteran had never had sepsis. R. at 38. A December 1987 VA discharge summary contains no mention of post-amputation infection, and upon discharge, the examiner described the right stump as "completely healed." R. at 44. Finally, the March 1990 autopsy report described the right stump

as "healed and grossly ... unremarkable.". R. at 51. Therefore, the Board's finding of fact that the veteran's service-connected right above-the-knee amputation was not the principal or contributory cause of death is not clearly erroneous. *See* 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■■■ However, the Board did not consider whether appellant was entitled to DIC benefits as a consequence of 38 U.S.C.A. § 1151 (West 1991). *See* 38 C.F.R. § 3.358 (1992); *see also EF v. Derwinski*, 1 Vet. App. 324, 326 (1991) (VA's duty to assist requires liberally reading all documents or oral testimony submitted prior to BVA decision to include issues raised therein). Under section 1151 of title 38,

> Where any veteran shall have suffered an injury, or an aggravation of an injury, *as the result of hospitalization*, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

(Emphasis added.) Therefore, a service-connected death resulting from hospitalization as described in section 1151 gives rise to a claim for DIC benefits under section 1310 in the same manner that a death arising from a service-connected disability incurred in or aggravated during service would give rise to such benefits.

In this case, the veteran was hospitalized at the Montgomery, Alabama, VAMC for pain in the right stump area. R. at 46. Following the discovery of a metastatic disease in the right pelvis, the VAMC performed a cystoscopy and a prostate biopsy. *Ibid.* Soon after these procedures were performed, the veteran died. Supplemental R. at 1. The veteran's death certificate indicated that sepsis was the immediate cause of death. R. at 45. The VA discharge summary indicated that the veteran contracted septicemia as the result of prostate biopsy instrumentation. R. at 46. The VA discharge summary also specified that a urinary tract infection due to instrumentation resulted in the septicemia. *Ibid.* A May 1990 autopsy report indicated that the "most probable cause of death ... is metastatic prostatic adenocarcinoma and chronic pyelonephritis with acute and chronic renal failure." R. at 50. (Pyelonephritis is an "inflammation of both the parenchyma of a kidney and the lining of its pelvis esp[ecially] due to bacterial infection." WEBSTER'S at 593.) A June 1990 Armed Forces Institute of Pathology consultation report listed acute and chronic renal failure with urinary tract infection and septicemia among its diagnoses. R. at 53. The RO was aware of the autopsy findings; its July 1990 rating decision sheet stated: "Final hospital report shows the sepsis was caused by instrumentation for prostate biopsy. There was urinary tract infection and acute renal failure, followed by cardiorespiratory arrest, revival, comatose state and then death." R. at 54.

Based on the evidence in the record that the veteran's death was due to an infection resulting from the prostate biopsy instrumentation at the VA hospital, the Board should have adjudicated a claim for DIC benefits arising by operation of section 1151 of title 38. *See EF*, 1 Vet.App. at 326; *cf. Gardner v. Derwinski*, 1 Vet.App. 584, 585–86 (1991) (Court remanded claim that VA treatment for a non-service-connected back condition resulted in leg damage on the grounds that BVA had misinterpreted section 1151 as requiring accident or fault), *aff'd*, 5 F.3d 1456, (Fed.Cir.1993). Therefore, the Court will remand the case for the Board to adjudicate appellant's claim under section 1151.

## III. CONCLUSION

Accordingly, upon consideration of the record, appellant's brief, and the Secre-

tary's motion for summary affirmance, the Court denies the Secretary's motion, VACATES the April 1991 decision of the BVA, and REMANDS the case for readjudication consistent with this opinion.