Mary S. TURNER, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–517.

United States Court of Veterans Appeals.

Feb. 24, 1994.

As Amended March 3, 1994.

Mary S. Turner, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Judges.

HOLDAWAY, Judge:

Appellant, Mary S. Turner, appeals a February 11, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for the cause of the veteran's death. The Court will affirm the decision of the BVA.

## BACKGROUND

Appellant is the widow of the veteran, Robert A. Turner. The veteran had active service from July 1941 to May 1961. His induction examination, reenlistment examinations, and retirement physical reflect no significant abnormalities. His service medical records (SMRs) indicate that he complained of back pain in February and March 1954. He was advised to apply Infra Red to the area, and no other complaints of back pain are recorded. However, the veteran's SMRs are silent as to any evidence of kidney disease, cardiovascular disease, or hypertension. Although the veteran noted sugar in his urine in an August 1964 Report of Medical History, his urinalysis was reported as normal, as was his genitourinary system.

In July 1972, the veteran filed an application for compensation or pension, indicating he had experienced chronic kidney failure in April 1972 and nephrotic syndrome in December 1969. In support of his claim he submitted hospitalization records from Peter Bent Brigham Hospital, a private hospital, and a letter from Dr. Lazarus, a private physician. The hospital records indicate that the veteran had experienced chronic renal disease which was first treated in 1969. Dr. Lazarus stated that "Mr. Turner gave a history of proteinuria in 1941 while in the U.S. Navy," and that the veteran's present illness was probably related to proteinuria manifested in the 1940s. In July 1974, the Board denied service connection for chronic renal disease.

In January 1980, the veteran filed a claim for service connection for oropharyngeal cancer, which he claimed was a result of exposure to radiation during service. Private medical records reflect that the veteran underwent a repeat electrocoagulation and excision of a recurrent tumor in the left base of the tongue extending to the tonsillar fossa in May 1977. The veteran's tumor recurred in June 1978, and he underwent radiation therapy at that time. In October 1978, the veteran was asymptomatic, and there was no evidence of recurrence.

On July 25, 1982, the veteran died. The death certificate lists the immediate cause of death as cardiac arrest, due to or as a conse-quence of myocardial infarction and coronary artery disease. Chronic renal failure was listed as a significant condition contributing to death. In August 1982, appellant filed a claim for dependency and indemnity compensation. In August 1982, the Regional Office (RO) denied service connection for the cause of the veteran's death since the Board had previously denied service connection for renal disease, and there was no evidence of coronary disease during service. Appellant and the veteran's daughter testified at personal hearings held in August 1983 and July 1984. Appellant testified that the veteran complained of symptomatology attributable to renal disease during service, and that his SMRs had been altered so that the veteran could remain in the service. The veteran's daughter, a registered nurse, testified that the veteran had died five years after his cancer was manifested, and that this was the normal life expectancy of someone with oropharyngeal cancer. In July 1985, the Board denied service connection for the cause of the veteran's death.

In September 1988, appellant requested her claim be reopened under the Radiation Exposed Veterans Compensation Act of 1988. In January 1989, her claim was denied by the RO. In May 1989, appellant opined at another personal hearing that the veteran had cancer when he died and that she was, therefore, entitled to service connection for cause of death. In July 1989, the hearing officer denied appellant's claim. In August 1989, appellant filed a VA Form 1–9 (Appeal to the Board).

In September 1989, appellant submitted a letter from Dr. Strom, a private physician. Dr. Strom stated his view that the veteran's renal disease developed slowly over time, beginning during service. Furthermore, Dr. Strom opined that the veteran's oropharyngeal cancer was a contributing cause of death. In November 1989, Dr. Strom testified before a traveling section of the Board. Dr. Strom testified that he had treated the veteran for many years, beginning in 1973. He further testified that the veteran had related to him a history of proteinuria and high blood pressure during service which would have been consistent with his develop-

ment of chronic renal disease years later. Dr. Strom speculated that the veteran's SMRs had been purged of any indication of these diseases so that the veteran could remain in the service. Dr. Strom also explained that persons suffering from chronic renal disease often develop cardiovascular disease as a result of high blood pressure, and that the veteran's cardiovascular system was additionally affected by the stress he experienced when he was informed that his cancer had recurred.

In June 1990, the Board determined that appellant's newly submitted evidence did not establish a new factual basis to grant her claim. Appellant appealed this decision to the Court. On August 27, 1991, the Court vacated and remanded the Board's June 1990 decision for the BVA to reconsider whether the veteran's cancer was subject to presumptive service connection on the basis of his participation in a radiation-risk activity during service. In January 1992, the Board conceded that the veteran's cancer was service connected and it remanded appellant's claim to the RO to obtain an expert medical opinion from a specialist in radiation oncology. In July 1992, Dr. Willett, the Chief of the Radiation Therapy Service of the VA Medical Center in Boston, Massachusetts, submitted his opinion. Dr. Willett determined:

> The radiation treatment [for cancer] did include the carotid arteries, both right and left (arteries in the neck), but the heart and arteries in the heart and adjacent to the heart did not receive any radiation. A direct effect of radiation therapy given for cancer of the oropharynx upon the coronary blood vessels is not possible. Indirect affects [sic] upon the heart vessels and other arteries from anxiety and stress, causing arteriosclerosis and atheromatous occlusive disease, is speculative, and in this [veteran's] case, acute anxiety in relation to his tonsillar cancer should not have lasted any longer than eighteen months, the period of time between the diagnosis of the cancer of the tonsil and final radiation treatment for the recurrence.

In response to Dr. Willett's opinion, Dr. Strom submitted a letter in October 1992, in which he reiterated that stress associated with the veteran's cancer contributed to his death. On February 11, 1993, the Board denied service connection for the cause of the veteran's death.

## ANALYSIS

 The Board's denial of service connection for cause of death is a factual determination. *Swann v. Brown*, 5 Vet.App. 229, 232 (1993), *Wood v. Derwinski*, 1 Vet.App. 190, 192 (1991). Pursuant to 38 U.S.C. § 7261(a)(4), and the Court's decision in *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), the Court must affirm findings of fact made by the Board unless they are found to be "clearly erroneous." In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its own judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

 Although chronic renal disease is listed as a significant cause of death on the veteran's death certificate, there is no direct evidence linking the veteran's renal disease with service. The veteran's SMRs consistently report normal urinalyses and blood pressure levels, as do medical records dated shortly after separation from service. The earliest clinical records indicating the incurrence of renal disease and cardiovascular disease are dated many years after service. Although Dr. Strom opined that the veteran's renal disease should have been service connected based on a history of proteinuria in service, this medical history, supplied to Dr. Strom by the veteran, was previously rejected by the BVA on the basis that all SMRs were negative for such a condition. A medical opinion based on a previously rejected factual predicate has no probative value. *See Reonal v. Brown*, 5 Vet.App. 458, 460–61 (1993); *Guimond v. Brown*, 6 Vet.App. 69, 72 (1993). Therefore, the BVA had a plausible basis for rejecting Dr. Strom's opinion with respect to this issue. It is apparent, therefore, that the Board, which cited and analyzed all the relevant facts in its excellent

and thorough decision had an eminently plausible basis for rejecting Dr. Strom's opinion.

The same is true as to the claim that the service-connected cancer was a cause of death. There is no evidence, other than the daughter's testimony, that the veteran's cancer was itself the cause of his death. Specifically, the veteran's death certificate does not list cancer as a cause of death, the veteran's medical records indicate that his cancer did not recur, and neither the VA's medical expert nor appellant's medical expert stated that appellant's death was a result of cancer. Furthermore, an independent medical expert, Dr. Willett, could not determine the effect, if any, stress associated with cancer had on the veteran's death. Additionally, Dr. Willett determined that radiation therapy to the veteran's neck did not damage the blood vessels in and around the heart to produce fatal cardiovascular disease. The Court finds the Board's decision rejecting cancer as a cause of death to be plausible.

The February 11, 1993, decision of the Board is AFFIRMED.