**Jane HARVEY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–118.**

United States Court of Veterans Appeals.

April 7, 1994.

---

William G. Smith, Los Angeles, CA, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Joan E. Moriarty, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

Jane Harvey, the widow of veteran Harold C. Harvey, appeals an October 30, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for the cause of the veteran's death. *Jane Harvey in the Case of Harold C. Harvey,* BVA 92–25682 (Oct. 30, 1992). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). The Secretary has filed a motion for summary vacation or, in the alternative, for summary affirmance. Since this case presents issues of first impression, however, summary disposition is not appropriate. *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). Therefore, the Court will deny the Secretary's motion for summary vacation or, in the alternative, summary affirmance. For the reasons set forth below, the Court affirms the October 1992 decision of the BVA but remands the case for further adjudication consistent with this opinion.

## I. Factual Background

The veteran served on active duty in the United States Army from March 23, 1951, to May 7, 1953. R. at 13. On September 23, 1951, he was wounded by mortar fire while serving in Korea. R. at 16. Following separation from service, on June 22, 1953, the veteran filed an application with a VA regional office (RO) seeking compensation for residuals of the mortar fire wounds to the left arm, both legs, and the left side of the neck and face. R. at 88. On September 4, 1953, the RO granted service connection for shell fragment wounds of the left upper forearm and lower forearm involving muscle groups VII and VIII (rated as 30% disabling), the right thigh involving muscle group XIV (30% disabling), the left lower leg and foot involving muscle groups X and XI (30% disabling), for paralysis of the left radial nerve as a residual of shell fragment wounds (20% disabling), and for a scar from a shell fragment wound to the left neck and scalp and left face (10% disabling); the veteran was assigned a combined disability rating of 80%. R. at 102.

On November 5, 1978, the veteran suffered a cerebrovascular accident (CVA). R. at 106, 111. A medical record from the Public Health Service Hospital in San Francisco, California, noted the veteran's service-connected disabilities and remarked that he had an "occasional intermittent limp without foot drop." R. at 112. The final diagnosis was malignant hypertension and left hemispheric CVA. R. at 114. On November 15, 1978, the veteran applied for a total disability rating based on individual unemployability due to his service-connected disabilities (TDIU rating) (R. at 106–09), and the RO denied a TDIU rating on April 11, 1979 (R. at 117).

On May 25, 1990, when the veteran fell at home, his wife found him and placed him in bed. R. at 154. The veteran became unresponsive one hour later, and his wife called for an ambulance to take him to a private hospital. R. at 153–54. At the hospital, he was diagnosed with an acute right frontotemporal parietal subdural hematoma. R. at 162. The veteran died at the hospital on May 27, 1990. R. at 127. The death certificate lists the immediate cause of death as craniocerebral trauma, which was described as an accident, and listed hypertensive cardiovascular disease, CVA by history, and severe arterionephrosclerosis as significant conditions contributing to death but not related to the immediate cause of death. *Ibid.*

On August 17, 1990, the veteran's widow, appellant in this case, filed a claim for service connection for the cause of the veteran's death. *See* R. at 128. The RO denied service connection on September 21, 1990. *Ibid.* In a December 3, 1990, Statement in Support of Claim, appellant wrote:

> My husband Harold died May 27, 1990[,] due to a fall while going to the bathroom approx[imately] 11:30 PM.

I contend that the [service-connected] left ankle and leg of my husband could have been a partial reason for the fall.

Although my husband died of [right] subdural hematoma, I feel the [service-connected] problems could help cause the fall.

R. at 131. On a February 4, 1991, VA Form 1–9 (Appeal to BVA), she wrote:

[The veteran's left foot] buckled under him time and again during the 37 years between his discharge and his death.... Had he not hit his head when he fell on May 25, 1990, it would have been no worse than a repetition of all his previous falls.... He did hit his head though and that led to his death.

R. at 137. At a March 26, 1991, personal hearing before the RO, she testified that her husband would fall six or seven times a year because of his service-connected leg condition. R. at 140. She also testified that she did not witness her husband's fall, but that she heard him fall in the bathroom and then found him lying on the floor. R. at 145. On May 20, 1991, the hearing officer continued the denial. R. at 172. In an August 6, 1991, letter, appellant wrote: "Without the intrinsic injuries of [the veteran's] foot combined with his weak ankle it is unlikely he would have fallen and hit his head.... [H]e fell because of the permanent injuries of his foot and ankle and sustained a subdural hematoma which resulted in his death on May 27th." R. at 281–82. She also submitted a letter from a co-worker of the veteran's, who wrote that the veteran "had trouble from time to time keeping his balance and would fall down from time to time...." R. at 283. On October 30, 1992, the Board denied service connection for the cause of the veteran's death. *Harvey*, BVA 92–25682, at 7.

## II. Analysis

### A. Dependency and Indemnity Compensation (DIC)

■ The surviving spouse of a veteran who has died after December 31, 1956, may file a claim for dependency and indemnity compensation (DIC). 38 U.S.C. §§ 1310, 1311. The veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1993). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1993). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1993). Therefore, the issue is whether a service-connected disability was a principal or contributory cause of the veteran's death. *See Stoner v. Brown*, 5 Vet.App. 488, 490 (1993).

■ In this case, the veteran died of an accidental craniocerebral trauma; significant conditions contributing to death but not related to the immediate cause of death included hypertensive cardiovascular disease, CVA by history, and severe arterionephrosclerosis. R. at 127. Appellant contends that the veteran would not have suffered the trauma to the head but for his service-connected disabilities in his leg and ankle which had caused him to stumble and fall in the past. In particular, she contends that on May 25, 1990, the veteran fell, hit his head, and presumably suffered the trauma that resulted in his death. Appellant is testifying as to the sequence of events that led to the trauma. Just as a layperson may testify as to the physical manifestations of a disease or injury, so appellant here is testifying as to an incident or event that resulted in a physically observable injury, i.e., the craniocerebral trauma. Therefore, appellant is not necessarily opining as to a matter involving medical causation, and her statements render the instant claim well grounded. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) (person submitting claim has "burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded") (quoting 38 U.S.C. § 5107(a)); *but see Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993) (Court held that lay assertion of medical causation did not render

claim well grounded and vacated BVA decision that had found claim to be well grounded). The Court will thus deny the Secretary's motion to vacate the BVA decision.

■ Here, however, the Board rejected appellant's statements that the veteran fell due to his service-connected disabilities. In its decision, the Board stated: "A review of terminal hospitalization reports ... reveals different, and much more probable causes of the fatal fall." *Harvey*, BVA 92–25682, at 6. Upon reviewing those reports, the Board assigned more probative value to a private hospital record relating the appellant's remark that her husband had "slipped on spilled urine while attempting to get to the bathroom...." *Harvey*, BVA 92–25682, at 6 (referring to R. at 157). The Board also assigned more value to records prepared during the same hospitalization which stated that the veteran's "baseline neurologic status is alert and interactive with slowed speech (apparently nonaphasic) with *ambulation with a cane and walker following a left hemisphere stroke* approximately 11 years ago." R. at 155 (emphasis added). The Board also referred to private medical records from the late 1980's indicating diagnoses of status-post CVA with right-sided hemiparesis. *See, e.g.,* R. at 206, 216. ("Hemiparesis" is defined as "muscular weakness or partial paralysis restricted to one side of the body." Webster's Medical Desk Dictionary 287 (1986).) As this Court stated in *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990),

> [U]nder the "clearly erroneous" rule this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a "plausible basis" in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.

The cause of death involves precisely such a finding of fact and thus cannot be overturned unless it is clearly erroneous. *See Turner v. Brown*, 6 Vet.App. 256, 258 (1994); *Stoner*, 5 Vet.App. at 491. In this situation, the Board was faced with a choice between two explanations accounting for the veteran's fall; its choice rests on a plausible basis.

■ Appellant argues that the Board was obligated to seek an independent medical opinion as to the cause of the veteran's death. Br. at 9 (citing *Thurber v. Brown*, 5 Vet.App. 119, 121 (1993), and *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991)). In *Santiago v. Brown*, 5 Vet.App. 288, 292 (1993), the Court set forth a useful analytical framework for distinguishing whether the Board's opinion is an

> unsubstantiated *medical* determination, which this Court has held the Board is unauthorized to render [cite omitted], or whether it is a *legal* determination, i.e., a finding of fact which the Board, as fact finder, has derived from a review of medical evidence which is sufficiently conclusive as to the underlying medical issues to enable the Board to render the legal determination.

The type of determination involved here is not one which lends itself to a medical opinion because no physician witnessed the actual sequence of events that led to the veteran's fatal fall. Appellant, thus, overemphasizes the medical nature of the cause of death in this instance. The immediate cause of death is not in dispute: the veteran suffered trauma to the head. What is in dispute is a factual matter: whether the veteran fell because of his service-connected disabilities and thus injured his head.

Appellant also argues that the Board did not provide reasons or bases as to its assessment of the credibility of her statements. Br. at 11–12. The Board, however, expressly assessed the credibility of those statements when it relied on the medical record relating appellant's account that the veteran slipped on spilled urine on the bathroom floor.

**B. DIC Claim Under 38 U.S.C. § 1318(b)**

■ In her brief, appellant also contends that the BVA did not adjudicate service connection under 38 C.F.R. § 3.22 (1993). Under the authorizing legislation, 38 U.S.C. § 1318(b), DIC benefits shall be paid to the surviving spouse or children of

> a veteran who dies, not as the result of the veteran's own willful misconduct, and who was in receipt of or entitled to receive (or but for the receipt of retired or retirement

pay was entitled to receive) compensation at the time of death for *a service-connected disability* that either—

(1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or

(2) if so rated for a lesser period, was so rated continuously for a period of not less than five years from the date of such veteran's discharge or other release from active duty.

(Emphasis added.) Under the implementing regulation, 38 C.F.R. § 3.22(a) (1993), such DIC benefits shall be paid when

(1) The veteran's death was not caused by his or her own willful misconduct; and

(2) The veteran was in receipt of *or for any reason* (including receipt of military retired or retirement pay or correction of a rating after the veteran's death based on clear and unmistakable error) was not in receipt of but would have been entitled to receive compensation at the time of death for *a service-connected disablement* that either

(i) Was continuously rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death; or

(ii) Was continuously rated totally disabling by a schedular or unemployability rating from the date of the veteran's discharge or release from active duty for a period of not less than 5 years immediately preceding death.

(Emphasis added.) Appellant does not allege that the veteran was rated totally disabled for a period of 10 or more years. Appellant also does not argue that the veteran was deprived of a total disability rating by a prior rating that was predicated on clear and unmistakable error (CUE). *See also Damrel v. Brown,* 6 Vet.App. 242, 245 (U.S.1994) (38 U.S.C. § 1318 permits award of DIC benefits where deceased veteran's total disability for 10 or more years may be established on basis of CUE in a prior rating action); *Allin v. Brown,* 6 Vet.App. 207, 210 (U.S.1994) (reviewing claim that, but for CUE in prior rating action, appellant would have been entitled to DIC benefits under 38 U.S.C. § 1318). Rather, appellant alleges that the veteran

*should have been* rated totally disabled for at least 10 or more years on the basis of individual unemployability.

The statute and the regulation speak of total disability on a schedular or unemployability basis arising from a *service-connected disability.* Appellant has provided no evidence that the service-connected disability or disabilities should have been rated totally disabling on either a schedular or unemployability basis. Regarding the veteran's employability, appellant testified at a March 1991 personal hearing that the veteran had worked on light duty status with the United States Postal Service following his stroke but that he had quit when he was assigned to night shifts. R. at 145. In addition, a retired postal supervisor wrote that the veteran had been working under his supervision on light duty status and that the veteran had experienced difficulty in keeping his balance and had fallen from time to time. R. at 283. The retired supervisor did not state that the veteran had been incapable of maintaining his employment and did not offer any reason to contradict appellant's own account that the veteran had resigned because of the shift assignment. Moreover, appellant undermines her own argument when she recognizes in her brief that the veteran had been unemployed since 1978 following a stroke. Br. at 8. There is no allegation that the veteran's 1978 stroke was service-connected.

Consequently, there was no well-grounded claim under 38 U.S.C. § 1318 or 38 C.F.R. § 3.22, and the BVA's failure to deal with this particular method of entitlement to service connection for the cause of the veteran's death was harmless error. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Grivois v. Brown,* 6 Vet.App. 136, 139 (U.S.1994); *Grottveit,* 5 Vet.App. at 92, *Murphy,* 1 Vet. App. at 81; *see also King v. Brown,* 5 Vet. App. 19, 21 (1993) (Court reviews well-groundedness as a matter of law); *see, e.g., Fisher v. Brown,* 4 Vet.App. 57, 60 (1993) (noting that failure to deal with extraschedular consideration of individual unemployability under 38 C.F.R. § 4.16(b) would be harmless error in absence of well-grounded claim).

## C. Death Pension

■ Nevertheless, the case must be remanded to the Board. A claim for DIC will be construed also as a claim for death pension. *See* 38 U.S.C. § 5101(b)(1); 38 C.F.R. § 3.152(b)(1) (1993); *Van Slack v. Brown*, 5 Vet.App. 499, 500–01 (1993). Under 38 U.S.C. § 1541(a),

[t]he Secretary shall pay to the surviving spouse of each veteran of a period of war who met the service requirements prescribed in [38 U.S.C. § 1521(j) ], or who at the time of death was receiving (or entitled to receive) compensation or retirement pay for a service-connected disability, pension at the rate prescribed by this section, as increased from time to time under [38 U.S.C. § 5312].

In this case, the veteran served in Korea from March 1951 to May 1953 and thus met the service requirements of 38 U.S.C. § 1521(j). *See also* 38 U.S.C. § 101(9), (11). The veteran also met the alternative service requirement entitling a veteran's surviving spouse to a pension under 38 U.S.C. § 1541 where the veteran had been receiving compensation for a service-connected disability at the time of death. The record does not disclose whether the Board ever adjudicated this issue. On remand, the Board must address this issue.

## III. Conclusion

Accordingly, upon consideration of the record, the Secretary's motion for summary vacation or, in the alternative, for summary affirmance, and appellant's brief, the Court denies the Secretary's motion for summary vacation or, in the alternative, summary affirmance, AFFIRMS the October 1992 decision of the BVA, and REMANDS the matter for adjudication consistent with this opinion.