﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 200605-92437
DATE: April 30, 2021

ORDER

Entitlement to service connection for bilateral hearing loss is denied. 

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for a lung diaphragm disorder is denied. 

FINDINGS OF FACT

1. The most probative evidence of record does not show that the Veteran’s current bilateral hearing loss manifested during active service or to a compensable degree within one year of separation from active service, or that his bilateral hearing loss is etiologically related to his active service.

2. With resolution of doubt in his favor, the Veteran’s tinnitus was incurred in active service.

3. The preponderance of the evidence is against finding that the Veteran has a lung diaphragm disorder due to an in-service event, injury, or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385.

2. The criteria for entitlement to service connection for bilateral tinnitus have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for a lung diaphragm disorder have not been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review.

The Veteran served on active duty in the United States Army from October 1963 to March 1965. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2020 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). In June 2020, the Veteran submitted his Decision Review Request (Board Appeal), selecting the option to have a hearing by a Veterans Law Judge and consideration of any evidence submitted at the hearing and within 90 days of the hearing. He was therefore scheduled to appear for a hearing before a Veterans Law Judge on October 7, 2020. However, the Veteran, through his attorney, cancelled the hearing. Nevertheless, the record remained open for 90 days following the date of the previously scheduled October 7, 2020 hearing to allow for the submission of additional evidence due to the nature of the Veteran’s hearing option.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); 38 C.F.R. § 3.303.

Certain chronic diseases will be presumed related to service if they were noted as chronic in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if continuity of the same symptomatology has existed since service, with no intervening cause. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2012); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a).

The benefit of the doubt rule provides that a veteran will prevail in a case where the positive evidence is in a relative balance with the negative evidence. Therefore, the Veteran prevails in a claim when: (1) the weight of the evidence supports the claim, or (2) when the evidence is in equipoise. It is only when the weight of the evidence is against the claim that the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Entitlement to service connection for bilateral hearing loss is denied. 

The Veteran contends that he has bilateral hearing loss that is related to an in-service, event, illness, or injury, as he submitted a service connection claim for bilateral hearing loss in December 2019 in which he indicated that the hearing loss began during his active service in 1964.

The claim was denied by a March 2020 VA rating decision. The rating decision reported the following favorable findings: (1) the Veteran was diagnosed with sensorineural hearing loss in at a March 2020 examination and (2) the Veteran’s DD Form 214 shows a military occupational specialty of infantry, which has a high probability for hazardous noise exposure.

For service connection to be granted for hearing loss, the requirements for service connection as defined in 38 C.F.R. § 3.385 need not be shown by the results of audiometric testing during a claimant’s period of active service. 38 C.F.R. § 3.385; Ledford v. Derwinski, 3 Vet. App. 87 (1992). 

For VA purposes, a minimum degree of hearing loss is a prerequisite for entitlement to service connection. McKinney v. McDonald, 28 Vet. App. 15 (2016). Hearing loss is a disability for VA purposes if the auditory threshold for any of the frequencies of 500, 1000, 2000, 3000 and 4000 Hertz is 40 decibels or greater; the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The threshold for normal hearing is between 0 and 20 decibels and higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155 (1993). 

Turning to the evidence, a July 1963 record of induction reported that the Veteran had 18 months of experience as a steel worker.

A July 1963 entrance medical examination included an audiological evaluation that revealed pure tone thresholds, in decibels, for the right ear at -5 (500 Hz), -10 (1000 Hz), -10 (2000 Hz), not tested (3000 Hz), and 5 (4000 Hz), and for the left ear at 5 (500 Hz), -5 (1000 Hz), -10 (2000 Hz), not tested (3000 Hz), and 5 (4000 Hz). 

The Board has acknowledged that audiometric threshold values in service department records dated prior to November 1, 1967 are presumed to use the American Standards Association (ASA) standard. Around 1967, the service departments changed to International Standards Organization-American National Standards Institute (ISO-ANSI) units. Therefore, the Board has converted the units recorded in the July 1963 examination report to ISO-ANSI units by adding between 5 and 15 decibels to the recorded data as follows: At 500, 1000, 2000, 3000, and 4000 Hz. add 15, 10, 10, 10, and 5 dB, respectively. The ISO-ANSI values for the July 1963 examination report at the respective frequencies are, for the right ear: 10 (500 Hz), 0 (1000 Hz), 0 (2000 Hz), not tested (3000 Hz), and 10 (4000 Hz), and for the left ear: 20 (500 Hz), 5 (1000 Hz), 0 (2000 Hz), not tested (3000 Hz), and 10 (4000 Hz). 

According to the Veteran’s DD Form 214, his military specialty was an infantry direct fire crewman. 

The Veteran’s service treatment records do not indicate any complaints, treatment, or diagnoses related to hearing loss in service. The Veteran documented on a September 1965 report of medical history that he did not experience ear trouble. He failed to report any problems with hearing loss at his separation medical examination conducted in September 1965, which included an audiological evaluation, presumably using the ASA standard. 

The evaluation revealed pure tone thresholds, in decibels, for the right ear at 0 (500 Hz), 0 (1000 Hz), 0 (2000 Hz), not tested (3000 Hz), and 0 (4000 Hz), and for the left ear at 0 (500 Hz), 0 (1000 Hz), 0 (2000 Hz), not tested (3000 Hz), and 0 (4000 Hz). The ISO-ANSI values for the September 1965 examination report at the respective frequencies are, for the right ear, 15 (500 Hz), 10 (1000 Hz), 10 (2000 Hz), not tested (3000 Hz), and 5 (4000 Hz), and for the left ear, 15 (500 Hz), 10 (1000 Hz), 10 (2000 Hz), not tested (3000 Hz), and 5 (4000 Hz). 

An April 2002 VA primary care note reported that he had “no hearing problem.”

The Veteran was afforded a VA hearing loss examination in March 2020. A VA authorized audiological evaluation revealed pure tone thresholds, in decibels, for the right ear at 15 (500 Hz), 10 (1000 Hz), 45 (2000 Hz), 50 (3000 Hz), 70 (4000 Hz), and for the left ear at 10 (500 Hz), 20 (1000 Hz), 35 (2000 Hz), 50 (3000 Hz), 55 (4000 Hz). Speech audiometry revealed speech recognition ability of 76 percent in the right ear and 76 percent in the left ear. The examiner diagnosed the Veteran with bilateral sensorineural hearing loss in the frequency range of 500 to 4000 Hz and in the frequency range of 6000 Hz or higher. The audiologist reported that there was no permanent positive threshold shift (worse than reference threshold) greater than normal measurement variability at any frequency between 500 and 6000 Hz for the right and left ear. 

The Veteran reported his military noise exposure as weapons, machine guns, and rifle fire. He reported having no noise exposure prior to or after his military service. The audiologist opined that the Veteran’s bilateral hearing loss was less likely as not caused by or a result of noise exposure while in service. As rationale, the examiner provided the following: 

After review of DD214 and MOS, though the Veteran’s specialty of infantry had a high probability for hazardous noise exposure, there was no shift in hearing while in the service and it has been 50+ years since he was in the Army and there were no documented complaints of hearing loss in that time. Therefore, it is less likely than not that his hearing loss is a result of military noise exposure.

Based on the evidence in this case, the Board finds that service connection for hearing loss is not warranted. The fact that the Veteran was exposed to some degree of noise during service does not by itself establish a basis for the grant of service connection. Rather, the noise exposure must cause the hearing loss. As noted above, a review of the Veteran’s service treatment records does not reflect any complaints, findings, or treatment for hearing loss. The Veteran failed to report any problems with hearing loss at his separation medical examination conducted in September 1965, and there is a lengthy period between his active service and the first documented complaint of hearing loss in December 2019. The Veteran’s failure to report any complaints of hearing loss until more than forty-seven years after discharge from active service is persuasive evidence that he was not experiencing any relevant hearing problems in the immediate years after service. 

The Board notes that the Veteran indicated on his VA claim form in December 2019 that he had experienced hearing loss since 1964. However, the Veteran denied having any hearing problems at a VA medical appointment in April 2002. Moreover, although the Veteran complained of tinnitus, the Veteran’s medical records are silent for any complaints of hearing loss. The Court of Appeals for Veterans Claims has determined the Board may properly assign more probative value to lay statements in contemporaneous medical records than subsequent statements made for compensation purposes. Harvey v. Brown, 6 Vet. App. 390, 394 (1994). Accordingly, the Board finds the April 2002 denial of any hearing problems more probative than the Veteran’s indication on his VA claim form that he had experienced hearing loss since 1964, which was made in the course of pursuing a claim for benefits.

The Board acknowledges that the Veteran believes his hearing loss is due to military noise exposure. To the extent the Veteran asserts that the hearing loss is etiologically related to service, such an assertion treads into the realm of medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007). For this purpose, the Board finds the Veteran’s statements are not competent medical evidence. Consequently, the Board gives more probative weight to the March 2020 VA examination report. The audiologist opined that the Veteran’s hearing loss was less likely than not caused by or a result of noise exposure while in service, as his records reflect no shift in hearing during service or complaints of hearing loss in the decades after his discharge. Therefore, the Board finds that the criteria for service connection for bilateral hearing loss have not been met.

The Board acknowledges that the Veteran’s representative submitted a letter in October 2020 in which he expressed that the March 2020 VA examiner’s rationale was conclusory and without merit. However, the Board does not agree with this assessment. The March 2020 examination report reflects that the examiner reviewed the Veteran’s electronic claims file, which included the Veteran’s enlistment and separation examinations. The examiner’s rationale for a negative nexus opinion was based on finding no hearing shift in service and no complaints of hearing loss during the more than 50 years after service. The Board notes that the records reviewed by the examiner included the Veteran’s report in April 2002 that he had no hearing problem.

Considering the foregoing, the preponderance of probative evidence of record is against the Veteran’s claim for entitlement to service connection for bilateral hearing loss. Because the weight of the evidence is against the Veteran’s claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). Service connection for bilateral hearing loss is therefore denied.

2. Entitlement to service connection for tinnitus is granted.

The Veteran contends that he has tinnitus that is related to an in-service, event, illness, or injury, as he submitted a service connection claim for tinnitus in December 2019 in which he indicated that the approximate date the tinnitus began was during his active service in 1964.

The claim was denied by a March 2020 VA rating decision. The decision reported the following favorable findings: (1) the Veteran was diagnosed with tinnitus at a March 2020 examination and (2) the Veteran’s DD Form 214 shows a military occupational specialty of infantry, which has a high probability for hazardous noise exposure.

According to the Veteran’s DD Form 214, he served as an infantry direct fire crewman during his active service from October 1963 to March 1965. 

A review of the Veteran’s service treatment records does not reflect any diagnoses or treatment for tinnitus. He did not report any problems with hearing loss or tinnitus at his separation medical examination conducted in September 1965

An April 2002 VA primary care note reported that the Veteran had experienced ringing in his right ear since he started taking Lipitor.

The Veteran was provided a VA tinnitus examination in March 2020. The Veteran did not remember when his tinnitus started but reported he had had experienced tinnitus for a long time. He described it as a constant ringing noise that feels worse in his right ear. The Veteran reported his military noise exposure as weapons, machine guns, and rifle fire. He reported having no noise exposure prior to or after his military service. The audiologist opined that the Veteran’s tinnitus was less likely than not caused by or a result of military noise exposure. As rationale, the audiologist provided the following: 

After review of DD214 and MOS, though the Veteran's specialty of infantry had a high probability for hazardous noise exposure, there was no shift in hearing while in the service and it has been 50+ years since he was in the Army and there were no documented complaints of hearing loss in that time. Therefore, it is less likely than not that his hearing loss is a result of military noise exposure.

The Board finds the VA audiologist’s opinion to be inadequate as her rationale only addressed the Veteran’s hearing loss and failed to address his tinnitus. When the Veteran filed his claim in December 2019, he reported that his tinnitus began during his active service. Although, at the March 2020 examination, the Veteran reported he had experienced tinnitus for a long time but could not remember when it started, the Board notes that the Veteran was nearly 80 years old at the time of the examination and had mentioned having memory problems during an earlier VA medical appointment in November 2019. 

The Court has specifically held that tinnitus is a type of disorder associated with symptoms capable of lay observation. See Charles v. Principi, 16 Vet. App. 370 (2002). As such, the primary role of the Board in adjudicating a tinnitus claim is to assess the credibility of the Veteran’s statements. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). During his active service, the Veteran served in the infantry as direct fire crewman, which had a high probability for hazardous noise exposure. He expressed that the onset of his tinnitus was during his active service. As the Veteran is competent to relate a history of noise exposure during service, there is no reason to doubt the credibility of his statements regarding military noise exposure.

Taking all reports into account, the Board concludes that the evidence is in relative equipoise, meaning that the evidence for and against the Veteran’s claim is essentially equal. In such circumstances, the regulations dictate that reasonable doubt is to be resolved in the Veteran’s favor. Accordingly, as the benefit-of-the-doubt rule is for application, the Board finds that the grant of service connection for tinnitus is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

3. Entitlement to service connection for a lung diaphragm disorder is denied. 

The Veteran contends that he has a lung diaphragm disorder that is related to an in-service, event, illness, or injury, as he submitted a service connection claim for a “lung diaphragm condition aggravated by service” in December 2019.

The claim was denied by a March 2020 VA rating decision. The decision reported as a favorable finding that the Veteran’s private records show that he was diagnosed with hypoxemia from paralysis of the right hemidiaphragm on August 10, 2012.

The Board initially notes that the Veteran was not afforded a VA examination for his service connection claim for a lung diaphragm disorder. In determining whether the duty to assist requires that a VA medical examination be provided, or medical opinion obtained with respect to a Veteran’s claim for benefits, there are four factors for consideration. These four factors are: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumptive period; (3) whether there is an indication that the disability or symptoms may be associated with service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. 38 U.S.C. § 5103A(d) and 38 C.F.R. § 3.159 (c)(4). The third factor, in particular, is a low threshold. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

In this regard, the Board finds that neither the Veteran nor the appellant submitted sufficient evidence to indicate that the Veteran had a lung diaphragm disorder that was related to an event, injury, or disease that occurred in service. Accordingly, the Board finds that no further development of the Veteran’s claims for service connection for a lung diaphragm disorder is required.

Turning to the evidence, a July 1963 induction report of medical history documented the Veteran’s negative responses to ever having shortness of breath, chronic cough, pain or pressure in chest, or sinusitis. A July 1963 induction medical examination reported that the Veteran’s lungs and chest were abnormal as he was found to have bronchitis that was not considered to be a disqualifying condition.

An August 1964 service treatment record reported that the Veteran complained of a throbbing ache on his left side and chest for two months. An examination found the heart to be regular with no murmurs. The impression of the examiner reported “no pathology.”

A September 1965 separation medical examination reported that the Veteran’s lungs and chest were normal. A September 1965 separation report of medical history documented the Veteran’s negative responses to ever having the following: shortness of breath, chronic cough, pain or pressure in chest, or sinusitis.

VA primary care notes compiled in January 2003, April 2004, and April 2005 all report that the Veteran’s lungs were clear to auscultation bilaterally. 

A March 2012 VA primary care note documented the Veteran’s complaints of congestion and sinus problems. It was reported that his lungs had no rales or wheezes.

An August 2012 private radiology report indicated that the Veteran experienced hypoxemia and shortness of breath. The x-ray findings were reported to be consistent with paralysis of the right hemidiaphragm.

A November 2019 VA primary care note reported the Veteran’s lungs were clear to auscultation bilaterally. It was reported that the Veteran had no rales, rhonchi, wheezing, or crackles. The Veteran denied wheezing, cough, shortness of breath, or abnormal sputum production.

A December 2019 VA treatment record reports that the Veteran gave up doing yard work due to experiencing shortness of breath after about 15 to 20 minutes. The Veteran reported that he was told by a medical professional that he has only one lung that functioned properly. He recalled that this was told to him when he was admitted for appendix surgery years ago. The Veteran believed that the lung disorder was the cause of his shortness of breath. However, he reported that “he didn’t let lung issue stop him,” as he worked as a mailman for 32 years and got a lot of exercise during that time.

Based on the evidence in this case, the Board finds that service connection for a lung diaphragm disorder is not warranted. As previously described, a September 1965 separation medical examination reported that the Veteran’s lungs and chest were normal. A September 1965 separation report of medical history documented the Veteran’s negative responses to ever having shortness of breath, chronic cough, pain or pressure in chest, or sinusitis. There is a lengthy period between his active service and the x-ray evidence of paralysis of the right hemidiaphragm in August 2012. The absence of complaints of shortness of breath in the Veteran’s medical records until more than forty-five years after discharge from active service is persuasive evidence that he was not experiencing any relevant breathing problems related to a lung diaphragm disorders in the immediate years after service. 

A lay person is competent to address etiology in some limited circumstances in which nexus is obvious merely through lay observation, such as a fall leading to a broken leg. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In this case, however, the Veteran’s earliest complaint of shortness of breath was many years after separation from active service and the question of causation extends beyond an immediately observable cause-and-effect relationship. As such, the Veteran is not competent to address the etiology of his lung diaphragm disorder. 

 

Based on a review of the foregoing evidence and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran’s claim for service connection for a lung diaphragm disorder. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the claim, that doctrine is not helpful to this claimant. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). Service connection has not been established and the Veteran’s claim for a lung diaphragm disorder must be denied.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Moore, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.