Canandao T. SALONG, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–620.

United States Court of Veterans Appeals.

Nov. 9, 1994.

Canandao T. Salong, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and John C. Winkfield, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, FARLEY, and MANKIN, Judges.

FARLEY, Judge:

This is an appeal from a May 26, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for pulmonary tuberculosis. A timely

appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). On April 25, 1994, appellant, pro se, filed an informal brief. On August 29, 1994, the Secretary filed a motion to vacate, and in the alternative, a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay. The Court will affirm the decision of the BVA.

## I.

The appellant served on active duty with the Philippine Army from March 1943 to August 1945. Record (R.) at 16–18. In August 1990, the appellant applied for compensation or pension, and subsequently clarified his claim for disability compensation for alleged service-connected pulmonary tuberculosis. The appellant responded to the VA regional office's (RO) query to clarify what benefit he was seeking in his original claim documents by stating: "I have the honor to submit herewith a xerox copy of a certificate I found regarding my illness which [is] evidence of continuity of my illness after I was discharged from the Army (Guerrilla)." R. at 29. The appellant also sent to VA a "Certificate" dated August 10, 1950, from Dr. Espinola. Dr. Espinola stated that the veteran "was treated by doctors as a case of pulmonary tuberculosis. Illness discovered shortly after his discharge from the military." R. at 31.

On May 16, 1991, VA issued a rating decision denying the appellant's claim. R. at 41. The original rating decision reported that enlistment and discharge physical examination reports were not available, and that service medical records did not show treatment "for any disability." R. at 41. By letter dated May 31, 1991, the adjudication officer informed the appellant that there was no basis for granting service connection for his claimed disability. R. at 43. On August 22, 1991, the appellant filed a Notice of Disagreement with the RO (R. at 45), and a Statement of the Case was issued on October 2, 1991 (R. at 48–50). By decision dated May 21, 1992, the BVA remanded the case for VA to obtain medical records from Dr. Espinola, and to schedule a VA pulmonary examination of the veteran to determine the nature and extent of any pulmonary tuberculosis, with the claims folder to be made available to the examining physician prior to the examination. R. at 63–66.

Dr. Espinola wrote in a medical note dated July 29, 1992, that he had examined and treated the appellant for pulmonary tuberculosis which occurred during the appellant's military service. R. at 85. A Report of Field Examination dated September 25, 1992, revealed that Dr. Espinola, who was seen at his medical clinic, acknowledged his certification of July 29, 1992, but indicated that this certificate was based upon memory, and that whatever clinical records he previously had were no longer available. R. at 95. Dr. Espinola also advised that chest x-rays were unavailable, and he could no longer recall if any were taken when the veteran was under his medical care. *Ibid.*

On October 28, 1992, Dr. Tanchuco, Chairman of the VA Tuberculosis (TB) Board, issued the TB Board's report. He stated that following review of the clinical history, physical examinations, negative sputum acid fast bacillus studies, and a single chest radiograph, the TB Board concluded that the appellant has "pulmonary infiltrations, right upper lung, etiology and activity undetermined." R. at 103.

By rating decision dated December 14, 1992, the rating board determined that no change in the prior denial of service connection was warranted. R. at 98. A Supplemental Statement of the Case was issued on December 23, 1992. R. at 112–19. In a May 26, 1993, decision, the BVA denied the appellant's claim for service connection for pulmonary tuberculosis.

## II.

Appellant's claim is unclear as to whether he claims he suffered from pulmonary tuberculosis during service or shortly after discharge from service but during the presumptive period. The RO and the BVA addressed both possibilities. The Board found the appellant's claim to be well grounded, but concluded that the preponderance of the evidence of record was against the claim that pulmonary tuberculosis was originally manifested during active duty military service or

within the presumptive period. R. at 2. The Secretary contends that the claim is not well grounded. Alternatively, the Secretary argues that if the claim is well grounded, then the Board's decision should be affirmed.

### A.

■ The Secretary argues that, for the appellant's claim to be well grounded, the appellant must submit medical evidence of clinical activity to meet the regulatory requirements for establishing pulmonary tuberculosis through private physician treatment during the presumptive period. Although such an argument is correct as it relates to prevailing on the issue of service connection, such evidence is not needed to satisfy the well-groundedness requirement.

■ Section 5107(a) of title 38 of the United States Code provides that "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). The determination whether a claim is well grounded is a matter of law, which the Court reviews de novo. *See Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993); *King v. Brown,* 5 Vet.App. 19, 21 (1993). The Court has defined a well-grounded claim as "a plausible claim, one which is meritorious on its own · or *capable* of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a) ]." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990) (emphasis added).

Here, the issue is whether a well-grounded claim exists when the appellant claims that he developed pulmonary tuberculosis either during or shortly after discharge from military service, and the appellant provides a "Certificate" from a private physician stating that the appellant was treated by doctors for pulmonary tuberculosis shortly after his discharge from the military. The doctor's statement of medical diagnosis coupled with the statement of treatment creates a "plausible" basis to believe that appellant's claim was capable of substantiation. *See Grottveit,* 5 Vet.App. at 91. Accordingly, the Court finds that, as a matter of law, the appellant's claim was well grounded.

### B.

■ Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131. Further, where a veteran served continuously for 90 days or more during a period of war, and pulmonary tuberculosis becomes manifest to a degree of 10% within three years from the date of termination of such service, that disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a) (1993).

The Secretary has prescribed regulations with respect to the nature and extent of proof and evidence needed to establish service connection for pulmonary tuberculosis. 38 C.F.R. §§ 3.370, 3.371, 3.372, 3.374, 3.375, and 3.378 (1993). *See Tubianosa v. Derwinski,* 3 Vet.App. 181, 184 (1992) (finding these regulatory provisions legitimately prescribed by the Secretary pursuant to and within the authority of 38 U.S.C. § 501(a)(1)).

1. Section 3.374(c) of title 38 of the Code of Federal Regulations, entitled "Effect of diagnosis of active tuberculosis," addresses the effect of a private physician's diagnosis of pulmonary tuberculosis after discharge from service as follows:

> Diagnosis of active pulmonary tuberculosis by private physicians on the basis of their examination, observation or treatment will not be accepted to show the disease was initially manifested after discharge from active service unless confirmed by acceptable clinical, X-ray or laboratory studies, or by findings of active tuberculosis based upon acceptable hospital observation or treatment.

38 C.F.R. § 3.374(c) (1993).

The appellant provided a "certificate" from a private physician, Dr. Espinola, dated August 1950, which stated that the appellant had been treated "by doctors" for pulmonary

tuberculosis and that the illness had been discovered shortly after the appellant's discharge from the military. R. at 31. In 1992, Dr. Espinola told a VA field examiner that he did not have any of the veteran's records or x-rays substantiating that such treatment occurred either before 1950 or thereafter. From this state of the evidence, the Board found that

[w]ithout records of the private treatment that the veteran allegedly received for his lung condition it cannot be established with medical certainty that pulmonary tuberculosis was present to a degree of 10 percent.... [W]e are aware of Dr. Espinola's August 1950 statement that the veteran's pulmonary tuberculosis was discovered shortly after his discharge from service. However, there was no confirmation by acceptable methods of Dr. Espinola's diagnosis of tuberculosis at that time.

R. at 6.

Further, 38 C.F.R. § 3.371(a) states that presumptive service connection for tuberculous disease may be established through "[e]vidence of activity on comparative study of X-ray films showing pulmonary tuberculosis within the 3–year presumptive period." *Id.* However, Dr. Espinola was unable to provide any x-ray films for such a comparative study.

■ 2. Pursuant to 38 C.F.R. § 3.374(a) diagnosis of pulmonary tuberculosis by the service department will be accepted for rating consideration. The Board addressed the appellant's claim that he first began experiencing symptoms of pulmonary tuberculosis while he was still in service, and the Board noted that the appellant's service medical records failed to report any such diagnosis. The Board then concluded that "there is no medical evidence of record to establish that the veteran complained of, or was treated for, pulmonary tuberculosis while on active duty." R. at 5. Moreover, while 38 C.F.R. § 3.370 states that "X-ray evidence alone may be adequate for grant of direct service connection," no service x-rays existed to facilitate such an analysis.

Also, examination of the appellant did not result in a finding of active pulmonary tuberculosis. The 1992 VA tuberculosis review report confirmed a diagnosis of pulmonary infiltrations of the right upper lung, but also concluded that "the etiology and activity were undetermined." R. at 103. Thus the VA examiners in 1992, after conducting a physical examination of the appellant and after reviewing the appellant's records, were unable to determine when the appellant's lung condition originated, and did not diagnose the appellant with active pulmonary tuberculosis.

Finally, the BVA reviewed the appellant's own assessments of the time of the onset of his disease. Due to inconsistencies between the appellant's statements and other evidence of record, specifically Dr. Espinola's evidence, the Board found that the appellant's statements of in-service diagnosis and treatment for pulmonary tuberculosis lacked credibility.

■ In denying service connection for pulmonary tuberculosis, the Board made a finding of fact. The Court reviews the Board's findings of fact under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Turner v. Brown,* 6 Vet. App. 256, 258 (1994); *Stoner v. Brown,* 5 Vet.App. 488, 491 (1993). In *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990), the Court stated: "[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1); *see Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet.App. at 57. The Board's determination that the appellant's evidence lacked credibility is supported by a plausible basis in the record.

### III.

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion to vacate or summarily affirm, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert,* 1 Vet.App. at 49; *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert, supra.* Accordingly, the decision of the Board of Veterans' Appeals is AFFIRMED.