Marcelina CACALDA, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–360.

United States Court of Veterans Appeals.

July 31, 1996.

Bruce Tyler Wick, Cleveland, OH, was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel;

and Patrick J. Lamoure, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and MANKIN [1] and STEINBERG, Judges.

PER CURIAM:

The appellant, Marcelina Cacalda, appeals the March 25, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to both service connection for the cause of the veteran's (her husband) death and non-service-connected death pension. The appellant, through counsel, seeks reversal of the BVA decision and a remand for further proceedings. The Secretary contends that the evidence of record is insufficient to award the benefits sought and that the Court should affirm the decision. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision in part, reverse the decision in part, and remand a matter to the Board for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The veteran, Alberto B. Cacalda, had recognized guerrilla service in the Philippine Army from May 1945 to January 1946. R. at 22. His entrance examination was lost or destroyed as a result of the war. *See* R. at 23. His discharge record showed that the veteran's lungs were normal and his chest x-rays were negative. R. at 16. No abnormalities were noted on the discharge record. *See ibid.* In an Affidavit for Philippine Army Personnel signed in January 1946 (R. at 17–20), the veteran responded "none" to a request for a chronological record of wounds and illnesses incurred during service (R. at 20).

In December 1955, the veteran submitted an application for compensation or pension, seeking service connection for pulmonary tuberculosis (PTB) and a bullet wound on the left leg below the knee. R. at 29–32. He claimed that PTB had been incurred in December 1944 and that the bullet wound had occurred in August 1945. R. at 30. He indicated on the application that he was not

treated for PTB during service. *See* R. at 30. The application stated that he first was treated for PTB in 1948 by Drs. Jesus R. Atencio and Ricardo Almario. R. at 30. He submitted affidavits by his friends, stating that they met the veteran in 1948 and, at that time, he was suffering from PTB. R. at 39–40. In February 1956, the VA regional office (RO) denied compensation on the ground that the evidence did not show that either PTB or the gunshot wound was incurred or aggravated in service. R. at 47–48.

The following month, the veteran submitted a Certificate of Attending Physician from Dr. Almario, who stated that he had treated the veteran on "several occasions" in 1948 and had diagnosed rales in the lungs, cough, chest pain, and asthenia. R. at 52. (Asthenia is the lack or loss of strength. WEBSTER'S MEDICAL DICTIONARY 53 (1986).) It also noted that no other records had been kept. *Ibid.* An affidavit from Dr. Atencio stated that he had treated the veteran in August 1948 for symptoms of PTB. R. at 54. The veteran further submitted a joint affidavit by his fellow comrades, stating that they had witnessed the veteran suffering from chest pains in service and that he had been shot in the left leg during service. R. at 55. In April 1956, the RO continued the denial of compensation (R. at 58–59), which the Board affirmed the following month (R. at 61–62).

In February 1993, the appellant filed an application for dependency and indemnity compensation (DIC) benefits and non-service-connected death pension. R. at 84–87. She submitted documentation showing that the veteran had died on September 4, 1979, from PTB. R. at 68, 74. In April and May 1993, lay statements were submitted attesting to the veteran's military service, his physical appearance, and his death. R. at 100–01. The appellant further submitted a medical certificate and a medical record, both dated September 1946, from Dr. Antonio L. Villanueva, stating that he had treated the veteran for PTB, "[p]ost [t]raumatic [s]yndrome," cardiac distress, avitaminosis, high fever, and general debility from September 1946 to January 1947. R. at 96, 99. Also

---

**1.** Judge Mankin was assigned and participated in this case, but died before its final disposition.

included was a medical statement from Dr. Jesus Canto, stating that the veteran had been hospitalized between January 30, 1978, and February 5, 1978, for "PTB-[m]inimal" and "[p]ulmonary consolidation." R. at 103.

In May 1993, the RO found that the claims were not well grounded, denied the appellant DIC benefits, and informed her that she was not eligible for non-service-connected death pension. R. at 108. The following month, the appellant filed a Notice of Disagreement (R. at 111, 113), and a Statement of the Case was issued (R. at 117–26). In July 1993, the appellant filed a VA Form 1–9, Appeal to the BVA. R. at 130–31. A hearing was held by a Board member in October 1993 at the RO. R. at 133–38. The appellant testified that the veteran had first gone to see Dr. Villanueva in 1977. R. at 136. She submitted a March 1982 medical certificate from Dr. Almario, who stated that the veteran had been his patient since 1947 and had been treated "off and on till he died September of 1979 of PTB." R. at 141. The appellant waived RO consideration of this new evidence. R. at 140.

In March 1994, the BVA affirmed the RO's denial of service connection for PTB and non-service-connected death pension, finding the claims not well grounded. R. at 5–10. A timely appeal to the Court followed.

## II. ANALYSIS

The Secretary argues that the appellant's claims are not well grounded because the DIC claim is not supported by competent medical evidence and the appellant is not eligible for non-service-connected death pension.

### A. DIC

When a veteran dies from a service-connected disability, the surviving spouse is generally entitled to DIC benefits. 38 U.S.C. § 1310; 38 C.F.R. § 3.5 (1995). The veteran's death will be considered service connected when the service-connected disability was either the "principal or a contributory cause of death." 38 C.F.R. § 3.312(a) (1995). A claim for DIC is treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims

brought by the veteran before his death. See 38 C.F.R. § 20.1106 (1995); Zevalkink v. Brown, 6 Vet.App. 483, 491 (1994).

When submitting a claim, including a DIC claim, a person has the burden of "submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107; see Grottveit v. Brown, 5 Vet.App. 91 (1993); Tirpak v. Derwinski, 2 Vet.App. 609, 611 (1992). The Court has defined a well-grounded claim as one which is plausible, "meritorious on its own or capable of substantiation." Murphy v. Derwinski, 1 Vet.App. 78, 81 (1990). "Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." Ibid. The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court. 38 U.S.C. § 7261(a)(1); see Grottveit, 5 Vet.App. at 92.

The appellant asserts that the veteran developed PTB in service or shortly thereafter. To substantiate this, she has submitted a medical certificate from Dr. Villanueva, stating that he had treated the veteran for PTB from 1946 until 1947 (R. at 96, 99) and a medical certificate from Dr. Almario, stating that he had treated the veteran for PTB from 1947 until his death (R. at 141). Further, the record on appeal includes documentation from Drs. Almario and Atencio, each stating that he had treated the veteran for PTB during 1948. Although the Secretary's assertion that the appellant's DIC claim requires competent medical evidence of clinical activity, as specified in VA regulations regarding PTB, is accurate in the context of determining a veteran's entitlement to service connection, see 38 C.F.R. § 3.374 (1995), that level of evidence is not needed to establish a well-grounded claim for PTB, Salong v. Brown, 7 Vet.App. 130, 132 (1994).

With respect to the DIC claim, the issue is whether the appellant has submitted a well-grounded claim to show that the veteran developed PTB in service or within the three-year presumption period following service and whether this disability was the principal or contributing cause of the veteran's death. See 38 U.S.C. §§ 1101, 1112(a)(3).

Because the determinative issue involves medical causation or a medical diagnosis, "competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." *Grottveit*, 5 Vet.App. at 93. Based on the following reasons, the Court holds that the appellant's DIC claim is well grounded. *See Salong, supra.* First, the statements from Drs. Atencio and Almario create a possibility that the veteran developed PTB in service or shortly thereafter. Second, the medical certificate from Dr. Almario, suggesting that the veteran had suffered from PTB from 1947 until the time of his death, and the veteran's death certificate, indicating that PTB was directly related to his death, substantiate the possibility that a service-connected disability was the principal or contributing cause of the veteran's death. R. at 141. The Board erred in holding that the appellant's DIC claim was not well grounded, and therefore the Board's decision, as it relates to this claim, will be reversed and the matter will be remanded for readjudication.

■ The appellant has argued that 38 C.F.R. § 3.374(c) (requiring that a private physician's diagnosis of PTB be substantiated by "acceptable clinical, [x]-ray or laboratory studies, or by findings of active tuberculosis based upon acceptable hospital observation or treatment") is a rule of evidence that VA may prescribe for itself for use in RO and BVA deliberations but which may not bind the Court. Instead, she has argued, the Court must apply the FEDERAL RULES OF EVIDENCE to her claims since these rules apply to "proceedings in the courts of the United States." Appellant's Brief at 6–7 (quoting FED. R. EVID. 101). However, the FEDERAL RULES OF EVIDENCE do not generally apply to proceedings before the RO, the Board, or this Court. *See Bielby v. Brown,* 7 Vet.App. 260, 267–68 (1994) (citing *Flynn v. Brown,* 6 Vet.App. 500, 503–04 (1994) (rules of hearsay evidence do not apply to proceedings before Board)). The Court noted in *Flynn* that the legislative history of the Veterans' Judicial Review Act specifically stated, "In such a beneficial structure [as the VA's non adversarial process,] there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof." *Flynn,* 6 Vet.App. at 503 (quoting H.R.REP. No. 963, 100th Cong., 2d Sess. 13, *reprinted in* 1988 UNITED STATES CODE CONGRESSIONAL & ADMINISTRATIVE NEWS 5782, 5795 (emphasis omitted)).

### B. Non–Service–Connected Death Pension

■ The Secretary is correct in arguing that the appellant is not eligible for non-service-connected death pension. *See Dela Pena v. Derwinski,* 2 Vet.App. 80 (1992). Under section 107(a) of title 38, United States Code, certain service by a veteran before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines is deemed not to be active service for purposes of granting non-service-connected benefits, including VA pension. *But see* 38 U.S.C. § 107(a)(1)-(3) (allowing this type of veteran to receive certain benefits, e.g., under chapters 11 and 23 of this title). This law has been held not to violate the United States Constitution. *Quiban v. Veterans Admin.,* 928 F.2d 1154, 1158 (D.C.Cir.1991), *reh'g denied* (July 18, 1991); *Dela Pena,* 2 Vet.App. at 81 (embracing the holding of *Quiban* ).

> Specifically, section 107(a) states:
> Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces ... shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person or the service of any other person in the Armed Forces....

38 U.S.C. § 107(a). Here, the veteran had recognized guerilla service from May 1945 to January 1946, which falls into the service period that has been deemed not to be active military service, and therefore the guerilla service does not entitle the appellant to non-service-connected pension. Accordingly, the

Board correctly applied the law, and the Court will affirm the Board's decision with respect to the non-service-connected pension claim.

■ The Board labeled its determination that the appellant was not eligible for non-service-connected pension as a finding that the claim was "not well grounded." The Court has held that the term "well grounded" should be limited to those circumstances where the Board is addressing the evidentiary burden that the appellant must fulfill to have a claim adjudicated on the merits. *See Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994). Where, as here, the law is dispositive, as opposed to the evidence, "the appeal to the BVA [should have been] terminated because of the absence of legal merit or the lack of entitlement under the law." *Ibid.* (citing FED.R.CIV.P. 12(b)(6) as analogous authority). However, the Board's failure to distinguish between a claim that was not well grounded and one that lacked legal merit or entitlement under the law is not a basis for a remand because the appellant has not been harmed by this error. *See* 38 U.S.C. § 7261(b) (Court shall take due regard of rule of prejudicial error); *Florentino v. Brown*, 7 Vet.App. 369, 370 (1995); *see also Giancaterino v. Brown*, 7 Vet.App. 555, 561 (1995).

### III. CONCLUSION

Accordingly, upon consideration of the record, the appellant's brief, and the Secretary's brief, the Court AFFIRMS the Board's March 25, 1994, decision insofar as the claim for non-service-connected pension is concerned. The Court REVERSES in part the Board's decision and REMANDS the case to the BVA for readjudication of the claim for service connection for the cause of the veteran's death in accordance with this opinion and 38 C.F.R. § 3.374(c). The appellant is free to submit additional evidence and argument on remand. *See Quarles v. Derwinski*, 3 Vet.App. 129, 140–41 (1992).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.