Norma I. **RUIZ**, Appellant,

v.

Hershel W. **GOBER**, Acting Secretary of Veterans Affairs, Appellee.

No. 95–911.

United States Court of Veterans Appeals.

July 24, 1997.

Michael E. Wildhaber, Washington, DC, was on the brief, for Appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Acting Deputy Assistant General Counsel; and Barbara J. Finsness, Washington, DC, were on the brief, for Appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

IVERS, Judge, filed the opinion of the Court. KRAMER, Judge, filed an opinion concurring in part and dissenting in part.

IVERS, Judge:

The appellant, the widow of veteran Juan Santiago Cruz, appeals from a May 24, 1995, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for the veteran's death. For the reasons stated below the Court will affirm the BVA's May 24, 1995, decision.

## I. FACTS

The veteran served on active duty from August 29, 1978, to February 7, 1980. Record (R.) at 80. Service medical records reflect treatment for acute lower back pain with paresthesia, recurring low back pain, and an impression of stenotic canal syndrome of the lumbar region with chronic low back pain. R. at 20, 23, 39, 41–54, 65. Paresthesia is an abnormal touch sensation, such as burning, prickling, or formication, often in

the absence of an external stimulus. DOR-LAND'S ILLUSTRATED MEDICAL DICTIONARY 1234 (28th ed.1994) [hereinafter DORLAND'S]. Stenotic refers to something that is abnormally narrowed. DORLAND'S at 1577. In the physician's summary section of a report of medical history dated October 23, 1979, it was noted that the veteran had back pain and suffered from depression. R. at 67. In November 1979 a Physical Evaluation Board determined that the veteran suffered from "[s]tenotic canal syndrome, lumbar region; [existed prior to service]," rated 10% disabling. He was found to be physically unfit for continued military service by reason of service aggravation of a "congenital deformity of the spine." R. at 70–71. The veteran's enlistment and separation examinations were devoid of any complaints of psychiatric problems. R. at 28–31.

The veteran was granted service connection for stenotic cord syndrome, lumbar region, rated 10% disabling, effective February 8, 1980. Supplemental (Suppl.) R. at 2. Records from May and June 1980 show treatment for anxiety neurosis with some depressive traits (R. at 90), depression (R. at 91), and severe anxiety neurosis ("rule out underlying psychotic process") (R. at 95). He was hospitalized from June 10 to September 4, 1980, for schizophrenia, undifferentiated with paranoid features. R. at 98, 183–84.

On June 13, 1980, the veteran requested service connection for his "present nervous condition . . . as the direct result of my service connected back condition." He indicated his ongoing hospitalization since June 10, 1980. R. at 89. The veteran was considered "disabled industrially." R. at 99. In July 1980, the veteran submitted an application for compensation or pension for low back pain and a nervous condition. R. at 102–05. A VA hospital summary report from December 11, 1980, to January 15, 1981, listed a diagnosis of schizophrenia, chronic, undifferentiated type. R. at 122, 181–82.

In January 1981 a VA psychiatric board reviewed the veteran's case and determined that the veteran suffered from "[s]chizophrenia, undifferentiated, with severe paranoid features." R. at 110–11. A January 1981 report of contact explained that the veteran's brother-in-law had called to inform VA that the veteran was receiving psychiatric treatment at a VA hospital. R. at 114. A February 13, 1981, rating decision granted service connection for schizophrenia, undifferentiated type with paranoid features, and granted a 0% rating from February 8, 1980, a 100% rating from June 10, 1980, and a 30% rating from October 1, 1980. That same rating decision showed a 10% disability rating for stenotic cord syndrome, lumbar region, effective February 8, 1980. The combined rating was 10% from February 8, 1980, 100% from June 10, 1980, and 40% from October 1, 1980. Suppl. R. at 1–2.

A VA hospital summary report from March 9 to April 21, 1981, noted that the veteran was treated for schizophrenia, undifferentiated type. R. at 117–18, 179–80, 198–201. He was considered unemployable. R. at 180. In an August 1981 VA psychiatric examination, the examiner concluded,

> Schizophrenia, Undifferentiated with paranoid and depressive features—severe. Hospitalization was recommended. This examiner was his treating psychiatrist a year ago. He is today much more disturbed and has deteriorated considerably in a year. His disability is severe for both social and industrial. He cannot manage funds.

R. at 128; see also R. at 191–94.

The veteran was hospitalized from August 7 to October 5, 1981, for schizophrenia. R. at 177–78. The examiner indicated that the veteran was "unable to engage in work or any gainful occupation." R. at 178. Mental hygiene progress reports from June 1980 to February 1982 show treatment for depression, severe psychotic symptoms, and suicidal thoughts. R. at 185–90, 195–96, 202–14.

In a January 1982 rating decision, the veteran's schizophrenia, undifferentiated type with paranoid and depressive features, was rated 30% disabling from February 21, 1981, and 100% disabling from March 9, 1981. R. at 131–32. The veteran was hospitalized from March 8 to April 5, 1982, for schizophrenia. R. at 175–76. A rating decision as to competency was deferred until April 23, 1982, at which time he was found to

be incompetent and rated 100% disabled due to schizophrenia. R. at 134.

The veteran was hospitalized from October 19 to October 25, 1982, from March 14 to April 19, 1983, and from July 15 to August 26, 1983, for schizophrenia. R. at 173–74, 215, 217. A November 23, 1983, VA psychiatric examination rendered an AXIS I diagnosis of schizophrenia, undifferentiated type, in partial remission. R. at 140.

Progress reports from October 1981 to September 1985 show treatment at a VA mental hygiene clinic for anxiety and depression. The veteran was described as "very ill." R. at 142–70, 229–83. In November 1985 the veteran underwent a VA psychiatric examination and was given an AXIS I diagnosis of schizophrenia, chronic, undifferentiated type, severe, active. The veteran's highest level of adaptive functioning in the previous year was described as "[grossly impaired]." R. at 290.

In November 1987 the veteran underwent a VA psychiatric examination. The AXIS I diagnosis was schizophrenic disorder undifferentiated type, active, chronic. R. at 294. The veteran was hospitalized from December 18, 1987, to January 14, 1988. The AXIS I diagnosis was schizo-affective disorder, chronic, severe with acute exacerbation. R. at 300. The veteran was considered unemployable. R. at 301. In a February 1988 rating decision the veteran was rated 100% disabled for schizophrenia, undifferentiated type, effective March 9, 1981. R. at 304.

The veteran was hospitalized from December 13, 1990, to January 23, 1991. The AXIS I diagnosis was schizo-affective disorder. R. at 306. The veteran died January 31, 1991. An autopsy report found "[c]ardkomegalia [sic] associated with hypertrophy of the left ventricle." R. at 322. Cardiomegalia is an enlargement or overgrowth of the heart due to the increase in size of its constituent cells. DORLAND'S at 268, 802. The cause of death was hypertensive cardiopathy. R. at 320–34. Hypertensive cardiopathy is a disease or disorder of the heart characterized by or causing increased tension or pressure. DORLAND'S at 801. In February 1991 the appellant submitted her application for dependency and indemnity compensation (DIC). R. at 308–16.

In an April 1992 rating decision, the appellant's claim for service connection for the veteran's cause of death was denied. R. at 336–37. The appellant submitted a Notice of Disagreement and a Statement of the Case was issued. R. at 341–42, 344–48. The appellant submitted VA Form 9, Appeal to the Board of Veterans' Appeals, contending that the veteran's death was related to his service-connected disabilities. R. at 352–53.

On May 24, 1995, the BVA rendered the decision currently on appeal. The Board determined that the appellant's claim for service connection for the veteran's death was not well grounded. R. at 6.

## II. ANALYSIS

### A. Well Grounded Claim

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Anderson v. Brown*, 9 Vet.App. 542, 545 (1996). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In *Tirpak v. Derwinski*, 2 Vet.App. 609, 610 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Anderson, supra; Epps v. Brown*, 9 Vet.App. 341, 343–44 (1996); *Caluza v. Brown*, 7 Vet. App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir.1996) (table). The determination whether a claim is well grounded is a conclusion of

law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Anderson, supra; Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993).

■ For service connection for the cause of death of a veteran, the first requirement, evidence of a current disability, will always have been met (the current disability being the condition that caused the veteran to die). However, the last two requirements must be supported by evidence of record. *Ramey v. Brown,* 9 Vet.App. 40, 46 (1996). There is no indication in the record that the veteran had any heart problem while in service. In addition, no competent medical authority has provided a nexus between the veteran's cause of death and his service-connected disabilities. The appellant is the only one to have provided a nexus. As a lay person, she is not competent to render such an opinion. *Espiritu v. Derwinski,* 2 Vet.App. 492 (1992).

### B. 38 U.S.C. § 1318 and 38 C.F.R. § 3.22(a)

The appellant argues that the Board failed to apply and consider two provisions of law that she maintains are reasonably made applicable by the facts and circumstances of the case, regardless of whether the appellant has expressly raised the matter.

Section 1318 of title 38 of the United States Code states:

(a) The Secretary shall pay benefits under this chapter to the surviving spouse ... of a deceased veteran described in subsection (b) of this section in the same manner as if the veteran's death were service connected.

(b) A deceased veteran referred to in subsection (a) of this section is a veteran who dies, not as a result of the veteran's own willful misconduct, and who was in receipt of or entitled to receive ... compensation at the time of death for a service-connected disability that either—

(1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or

(2) if so rated for a lesser period, was so rated continuously for a period of not less than five years from the date of

such veteran's discharge or other release from active duty.

*See also* 38 C.F.R. § 3.22(a) (1996).

■ The record indicates that the veteran was continuously rated 100% disabled because of his schizophrenia from March 9, 1981, thirteen months after he was discharged from service. Therefore, the veteran died 37 days short of the 10–year statutory requirement of 38 U.S.C. § 1318(b)(1). The appellant could not be eligible for DIC benefits pursuant to § 1318(b)(2) as the veteran was not rated 100% disabled due to his schizophrenia upon his discharge from service. The Court notes that the BVA's failure to address this provision in its May 24, 1995, decision was harmless error, as the application of the provision would not change the outcome of the appellant's case. *See Wamhoff v. Brown,* 8 Vet.App. 517, 520 (1996) (it was harmless error for the BVA to have applied the incorrect version of regulations as the BVA's decision would not have changed if the correct version were applied).

### C. Clear and Unmistakable Error (CUE)

■ VA regulations provide:

Previous determinations which are final and binding, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision of the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1996). A claim of CUE is a collateral attack on a final RO decision. *Crippen v. Brown,* 9 Vet.App. 412, 417–18 (1996); *Smith v. Brown,* 35 F.3d 1516, 1521 (Fed.Cir.1994); *Eddy v. Brown,* 9 Vet.App. 52, 57 (1996); *Duran v. Brown,* 7 Vet.App. 216, 224 (1994). The CUE review authority in 38 C.F.R. § 3.105(a) relates only to review of decisions of the agency of original jurisdiction (RO) and not to those of the BVA. *See*

*Smith,* 35 F.3d. at 1527. The Court has defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

*Crippen,* 9 Vet.App. at 418; *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). As a threshold matter, "a CUE claim cannot be raised for the first time before this Court, but ... must have been the subject of a final prior BVA adjudication." *Crippen,* 9 Vet. App. at 418; *Russell,* 3 Vet.App. at 314–15.

■ The appellant argues that the February 13, 1981, RO decision contains CUE. Appellant's Brief (Br.) at 19–22. She argues that 38 U.S.C. § 1318 and 38 C.F.R. § 3.22(a) provide that a rating decision which is found to have contained CUE may change an effective date. Therefore, she argues, under the CUE provision her husband would have been continuously rated totally disabled for 10 years prior to his death. Appellant's Br. at 19.

However, the appellant has raised the CUE claim for the first time in her brief before the Court. In *Sondel v. Brown,* the Court stated, "The necessary jurisdictional 'hook' for this Court to act is a decision of the BVA on the *specific issue* of [CUE].... Thus, a claimant may not raise for the first time a specific CUE claim before this Court." 6 Vet.App. 218, 219–20 (1994). The Court continued, "If, however, the appellant has failed to raise the specific issue before the Board, the appeal must be dismissed as to that issue because it is improperly and improvidently raised for the first time before this Court." *Sondel,* 6 Vet.App. at 220. Accordingly, an appeal seeking review of the February 1981 RO decision for CUE is not properly before this Court and will not be discussed.

### D.  38 C.F.R. § 20.1106

■ The appellant contends that there is no rational basis for excluding 38 U.S.C. § 1318 DIC claimants from the benefit of 38 C.F.R. § 20.1106 which other DIC claimants enjoy, and therefore, the exclusionary language of the regulation should be set aside as contrary to the United States Constitution's guarantee of equal protection under the law. Such a claim must be addressed as one for denial of due process under the Fifth Amendment. "[While t]he Fifth Amendment ... does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states[,] ... discrimination may be so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). When determining whether there has been a violation of due process, the Supreme Court applies the same standard to the federal government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment. *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 (1975); *see also Robinson v. Brown,* 9 Vet.App. 398, 401 (1996); *Latham v. Brown,* 4 Vet.App. 265, 266 (1993). "Under this standard, unless a classification is suspect, such as where it is predicated on race or alienage, or where it involves a fundamental right, such as voting, it need meet only the rational basis test. *See Nordlinger v. Hahn,* 505 U.S. 1, 8–12, 112 S.Ct. 2326, 2330–33, 120 L.Ed.2d 1 (1992)." *Robinson,* 9 Vet.App. at 401; *Latham,* 4 Vet.App. at 266–67. "Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights ... carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981).

■ The appellant argues here, for the first time, that the application of 38 C.F.R. § 20.1106 makes her the victim of discrimination and this denies her due process because, unlike those survivors who claim DIC under 38 U.S.C. § 1310, she is not entitled to have issues in her claim "decided without regard

to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 20.1106. She contends that Congress provided "two equivalent avenues for achieving [DIC] benefits: 38 U.S.C. § 1310 and § 1318." She argues that there is no rational basis for the regulations distinction between § 1310 and § 1318 claimants. Appellant's Br. at 24–25.

Section 20.1106 provides,

Except with respect to benefits under the provision of 38 U.S.C. § 1318 ... issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 20.1106 (1996). Pursuant to 38 U.S.C. § 7261 the Court has the authority to

(1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary;

. . . .

(3) hold unlawful and set aside decisions, findings, ... conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board.

38 U.S.C. § 7261(a)(1), (3). This Court has the power to make determinations regarding the interpretation and application of regulations and constitutional claims. *See Robinson,* 9 Vet.App. at 400–01; *Giancaterino v. Brown,* 7 Vet.App. 555, 557 (1995).

■ The equal protection clause directs that all persons similarly situated must be treated alike. The appellant's argument that § 1310 and § 1318 are equivalent avenues is not a correct characterization of these statutes. The Secretary states,

A fundamental tenet of VA compensation law is that disability compensation will be paid only for disease or injury incurred in or aggravated by active service. The entire scheme of the disability compensation program, as legislated by Congress, provides for disparate treatment for those individuals who have service-connected disabilities, and receive disability compensation payments therefor, and those who do not have service-connected disabilities

and do not receive disability compensation payments. Chapter 11, title 38, United States Code. The two groups are not "similarly situated" individuals.

Secretary's Br. at 20.

This Court, in *Green v. Brown,* stated,

[U]nder applicable law and regulation, DIC may be awarded on four separate bases, each of which requires particular evidence—a regular service-connected-death basis under 38 U.S.C. § 1310 and three section 1318 bases: (1) That the veteran was continuously rated totally disabled for 10 or more years immediately preceding death (38 U.S.C. § 1318(b)(1)); (2) that the veteran was continuously rated totally disabled for 5 or more years immediately preceding death if also rated at the date of discharge (38 U.S.C. § 1318(b)(2)); or that the veteran would have been entitled to receive the 100% compensation referred to in (1) or (2), above, at the time of his or her death but was not receiving it for some reason (38 U.S.C. § 1318(b)).

10 Vet.App. 111, 115 (1997).

There is a rational basis for treating the two groups of claimants differently as 38 C.F.R. § 20.1106 does. "A claim for DIC [under § 1310] is treated as a new claim, regardless of the status of adjudications concerning service-connected disability claims brought by the veteran before his death. *See* 38 C.F.R. § 20.1106." *Cacalda v. Brown,* 9 Vet.App. 261, 263 (1996); *see also Green, supra.* However, DIC claimants under § 1318 can receive benefits if they meet the total disability rating requirement *and* if certain specified time limits are met pursuant to § 1318(b). The appellant's DIC claim did not meet the threshold requirements of § 1310 and could only be considered under § 1318, but since she did not meet the time requirement of 38 U.S.C. § 1318(b)(1), her claim was denied.

The Court notes that survivors of veterans who died of service-connected disabilities are not similarly situated to survivors of veterans who have died of non-service-connected causes. The latter usually do not receive DIC benefits. Section 1318 operates so that a survivor may be treated "as if" the veteran's death were service connected, but only

when certain specified time periods have been met. The purpose of § 1318 is to allow benefits for claimants who would not otherwise be entitled to DIC benefits, but only if they meet both the total disability requirement and the time limits. There is a rational basis for not allowing these claimants to readjudicate, after the veteran's death, the underlying merits of the veteran's claim.

## III. CONCLUSION

For the reasons stated above, the BVA's May 24, 1995, decision is AFFIRMED as to its decision of service connection for cause of death.

KRAMER, Judge, concurring in part and dissenting in part:

I concur in part II.A. and C., and in part II.B. except insofar as it does not address any impact of *Green v. Brown,* 10 Vet.App. 111, 118 (1997), and the briefing order currently outstanding in *Carpenter v. Brown,* 10 Vet.App. 248 (1997). I dissent with respect to part II.D. because the issue of the validity of 38 C.F.R. § 20.1106 (1996) is raised for the first time on appeal and is thus not ripe for consideration (*see Rosalinas v. Brown,* 5 Vet. App. 1, 2 (1993); *Branham v. Derwinski,* 1 Vet.App. 93, 94 (1990)), and, because, even if it were, that issue cannot properly be decided without addressing *Green* and *Carpenter,* both *supra.*

In *Green,* the Court held:

[A] CUE claim is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran hypothetically *would have been entitled to receive a different decision on* a service-connection-related issue—here *the effective date* of the award of the [total disability based on individual unemployability] rating—based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable.

*Green,* 10 Vet.App. at 118 (emphasis added). In *Carpenter,* the Court is dealing with a BVA decision issued during a deceased veteran's lifetime and not the subject of appeal,

which *if* binding on the DIC claimant would likely preclude DIC entitlement under 38 U.S.C. § 1318 because the deceased veteran lacked a full ten years of service-connected total disability immediately preceding death. Based on the above quoted *Green* holding, the Court in *Carpenter* has ordered the parties to address whether that BVA decision now precludes demonstrating that "the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue—here the effective date of the award of [ ] total disability."

In the event that the Court in *Carpenter* were to determine that such a BVA decision does not preclude the DIC claimant from now demonstrating the deceased veteran's ten-year total disability immediately preceding death, to the extent that 38 C.F.R. § 20.1106 may be read as precluding consideration of entitlement under 38 U.S.C. § 1318 because of a prior unfavorable disposition during the veteran's lifetime, such preclusion would be violative of section 1318's "entitled to receive" provision and thus invalid.

Because I believe that the Court should not be addressing the validity of section 20.1106 without a preceding BVA decision as to that regulation's application to the facts before us and because I do not think the majority can properly address the validity of section 20.1106 without first addressing the *Green* and *Carpenter* issues, I respectfully dissent.