**Barbara A. CARBINO, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

**No. 96–1625.**

United States Court of Veterans Appeals.

Nov. 6, 1997.

Stephen L. Purcell, Washington, DC, was on the brief for the appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Amy S. Gordon, Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

IVERS, Judge.

The appellant, the widow of veteran Frank S. Carbino, appeals from a September 24, 1996, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for the cause of the veteran's death and for the cause of the veteran's death due to exposure to Agent Orange. In her brief the appellant limited her appeal to the issue of service connection for the cause of the veteran's death. The Court deems the appellant to have abandoned her appeal with respect to the issue of the cause of the veteran's death due to Agent Orange exposure. *Bucklinger*

*v. Brown,* 5 Vet.App. 435 (1993). The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons stated below the Court will affirm the BVA's September 24, 1996, decision.

## I. FACTS

The veteran, a Vietnam veteran, served on active duty in the Army from October 1965 to September 1967. Record (R.) at 20. The veteran's service medical records (SMRs) were devoid of any problems or complaints related to sarcoidosis. R. at 22–50. Sarcoidosis is a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, involving almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1484 (28th ed.1994) [hereinafter DORLAND'S].

In July 1978, during a physical examination for a new job, x-rays were taken. R. at 53. After they were compared with a 1968 x-ray the impression was sarcoidosis. R. at 146. Private medical records were submitted from July 1978 to December 1992 showing diagnoses of sarcoid (R. at 53, 97); sarcoidal granulomatous dermatitis consistent with sarcoidosis from the right knee (R. at 74); asymptomatic dormant sarcoidosis (R. at 165); sarcoid changes to the right side of the neck, ankles, and right second toe (R. at 120, 123, 129, 137); sarcoid on his neck and both knees (R. at 107, 127, 133–34); and systemic sarcoidosis (R. at 62).

The veteran died on December 19, 1992. The autopsy report listed the cause of death as systemic sarcoidosis with involvement of the heart, lungs, visceral pleura, and hilar and mediastinal lymph nodes, and spleen; severe cardiac sarcoidosis with marked septal scarring involving the cardiac conduction system; sudden death likely secondary to complete heart block and arrhythmia; and generalized visceral congestion. R. at 76. Cardiac sarcoidosis is the involvement of the heart in sarcoidosis, with lesions ranging from a few asymptomatic, microscopic granulomas to widespread infiltration of the myocardium by large masses of sarcoid tissue, often leading to arrhythmias, heart block, mitral regurgitation, or sudden death. DORLAND'S at 1485. The report also indicated that the veteran was diagnosed with systemic sarcoidosis with cardiac involvement in the mid-1980s. R. at 76. The death certificate listed the immediate cause of death as cardiac arrest. Sarcoidosis was listed as a condition contributing to his death. R. at 177.

In May 1993 the appellant submitted an application for dependency and indemnity compensation (DIC). She contended that the veteran had contracted sarcoidosis while serving in Vietnam. R. at 169–72. In a September 1993 rating decision, service connection for the veteran's cause of death was denied as was her claim for DIC. R. at 183–85.

A November 1993 lay statement by a member of the veteran's family contended that the veteran had not suffered from any skin problem until after service. R. at 193. The appellant submitted that statement and a Notice of Disagreement. R. at 196. A Statement of the Case (SOC) was issued. R. at 199–206. She submitted VA Form 9, Appeal to the Board of Veterans' Appeals. R. at 208.

In a January 11, 1994, statement the appellant revealed that the veteran's legs began to peel and that he had a red rash soon after service. He was treated with various cremes but the rash persisted. In 1988 the veteran was seen by a cardiologist after he experienced rapid heart rates and arrhythmia. He was placed on Prednisone which he took until his death. R. at 212. Prednisone is a steroid used in the treatment of various diseases including respiratory diseases such as symptomatic sarcoidosis. PHYSICIANS' DESK REFERENCE 2595–96 (50th ed.1996). The appellant reported that a doctor had told the veteran that the sarcoidosis had affected his heart. R. at 212. She contended that there was "no doubt in [her] mind that the skin rash which occurred immediately after his discharge, the enlarged glands, and the heart sarcoid, were all manifestations of the same ailment." She explained that the disease had first manifested in 1967. R. at 213. In addition, several lay statements were submitted which discussed the veteran's rash and his weakness, i.e., inability to climb a flight of stairs without stopping. R. at 216–25.

In March 1994 the appellant testified that the veteran's rash began within three weeks of his discharge from service. R. at 229. She testified that the veteran saw a dermatologist, Dr. Schwartz, in 1968 or 1969. She indicated that Dr. Schwartz's treatment records for the veteran had been destroyed in 1992. She explained that the appellant suffered from the skin rash prior to his diagnosis of sarcoidosis in 1978. Specifically, she testified regarding the veteran's initial sarcoidosis diagnosis:

> It was an enlarged gland which [the doctors] diagnosed as sarcoidosis and then they said, well this rash on your leg, you know because that was really predominantly red at that point, ... and they said ... this is sarcoidosis and that's how I know my husband came home from service with this thing.

R. at 232. She described how the veteran eventually became so weak that he could not carry groceries and he could not work full time. R. at 234–35. That same month, the hearing officer rendered his decision, denying service connection for the cause of the veteran's death. R. at 242–43. A Supplemental SOC (SSOC) was issued. R. at 245–51.

On March 29, 1996, the BVA remanded the appellant's case for further development. R. at 259–62. In an April 1996 rating decision, service connection for the appellant's cause of death was denied. R. at 264–65. An SSOC was issued. R. at 267–72.

On September 24, 1996, the BVA rendered the decision currently on appeal. The Board concluded that the appellant had not submitted a well-grounded claim for service connection for the cause of the veteran's death. R. at 8.

## II. ANALYSIS

■ The appellant argues that the lay evidence describing the veteran's development of a skin condition within weeks of his separation from service, combined with the medical evidence that the veteran's condition existed continually from 1978 grounds her claim. She argues that to require her to submit, at this stage of her claim, evidence of a "diagnosis" of her husband's skin condition as sarcoidosis within the first post-service year is tantamount to requiring her to present conclusive evidence supporting her claim. Quoting from *Cook v. Brown,* 4 Vet.App. 231 (1993), she states, "[T]here need be only symptomatology which, in retrospect, may be identified as manifestations of the chronic condition...." *Id.* at 237.

### A. Well–Grounded Claim

■ "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *see Anderson v. Brown,* 9 Vet.App. 542, 545 (1996). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). In *Tirpak v. Derwinski,* 2 Vet.App. 609, 610 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Anderson, supra; Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd,* 78 F.3d 604 (Fed.Cir.1996) (table). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Anderson, supra; Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993).

For service connection for the cause of death of a veteran, the first requirement, evidence of a current disability, will always have been met (the current disability being the condition that caused the veteran to die). However, the last two requirements must be supported by evidence of record. *Ruiz v. Gober,* 10 Vet.App. 352, 356 (1997); *Ramey v. Gober,* 120 F.3d 1239 (Fed.Cir.1997), *aff'g,* 9 Vet.App. 40 (1996). There is no indication in

the record that the veteran had sarcoidosis while in service. Additionally, no competent medical authority has provided a nexus between the veteran's sarcoidosis and his service. The appellant and other lay persons are the only ones to have provided a nexus. As lay persons, they are not competent to render a medical opinion. *Espiritu v. Derwinski,* 2 Vet.App. 492 (1992); *see also Ruiz,* 10 Vet.App. at 356. Based upon the Court's current case law, the appellant's claim for service connection for the cause of the veteran's death is not well grounded.

### B. *Robinette v. Brown*

■ The Secretary contends that there is no *Robinette v. Brown,* 8 Vet.App. 69 (1995), error. During the appellant's March 1994 hearing regarding the veteran's initial diagnosis of sarcoidosis the appellant indicated:

It was an enlarged gland which [the doctors] diagnosed as sarcoidosis and then they said, well this rash on your leg, you know because that was really predominantly red at that point, ... and they said ... this is sarcoidosis and that's how I know my husband came home from service with this thing.

R. at 232. The appellant has not identified the doctor that purportedly linked the veteran's sarcoidosis to service and/or where he was being treated. In *Robinette,* the Court held that "the connection between what a physician said and the layman's account of what he purportedly said, filtered as it was through a layman's sensibilities, is simply too attenuated and inherently unreliable to constitute 'medical' evidence" and therefore, could not well ground a claim. *Robinette,* 8 Vet.App. at 77; *see also Marciniak v. Brown,* 10 Vet.App. 198 (1997); *Franzen v. Brown,* 9 Vet.App. 235 (1996). Therefore, the appellant's March 1994 testimony regarding what a doctor purportedly told her regarding the etiology of the veteran's sarcoidosis does not impose a duty under *Robinette* nor does the doctor's purported statement link the veteran's condition to service.

### C. MANUAL M21-1

The Secretary argues that the BVA properly denied the appellant's claim because there is no objective evidence linking the veteran's cause of death to his period of service nor is there evidence that sarcoidosis manifested itself to a compensable degree within the presumptive period. In response, the appellant cites the VA ADJUDICATION PROCEDURE MANUAL, M21-1 [hereinafter MANUAL M21-1], for the proposition that VA has voluntarily expanded the duty to assist to claims which are "potentially plausible." The provision the appellant relies upon states,

Where medical causation is the issue, competent medical evidence to the effect that the claim is plausible or possible is required to make the claim well grounded. If a claim is *potentially plausible* on a factual basis, the regional office must initiate development. *The duty to assist will prevail while development is undertaken.* If after full development the claim is found to be well grounded, the merits of the claim must be reviewed.

MANUAL M21-1, Part VI, para. 2.10f (Aug. 5, 1996) (emphasis added) (citations omitted). In *Epps v. Gober,* the Federal Circuit stated that 38 U.S.C. § 5107(a) "indicates that giving the benefit of the doubt to a claimant does not relieve the claimant of carrying the burden of establishing a 'well grounded' claim." The Federal Circuit continued, "In summary, there is nothing in the text of § 5107 to suggest that the DVA has a duty to assist a claimant until the claimant meets his or her burden of establishing a 'well grounded' claim." *Epps v. Gober,* 126 F.3d 1464, 1469 (Fed.Cir.1997), *aff'g,* 9 Vet.App. 341 (1996). While MANUAL M21-1, Part VI, para. 2.10f appears to volunteer the Secretary's assistance to a claimant with his or her claim prior to the submission of a well-grounded claim, the *Epps* decision makes clear that the statutory duty to assist does not attach until a well-grounded claim has been submitted. The *Epps* decision, however, appears not to have addressed either the first clause of § 5107 or its relationship to MANUAL M21-1.

This Court notes that the relevant parts of Manual M21-1 do not appear to be particularly well thought out regarding the status of a claimant and the duty to assist. This is evident from the following: MANUAL M21-1, Part III, para. 1.01d (May 19, 1997) states that

[w]hile the *burden of proof ultimately rests with the claimant,* VA will make reasonable efforts to help the claimant obtain any

evidence that he or she specifically identifies, or any evidence which is reasonably suggested to exist which might enable *claimant to substantiate his or her claim.*

(emphasis added); MANUAL M21–1, Part III, para. 1.05a (May 19, 1997) states that

> [t]he *ultimate responsibility* for submitting evidence *to establish or verify entitlement* to VA benefits rests with the *claimant.* However, on request by a *beneficiary* or authorized representative, *make reasonable efforts to assist claimants* in securing public documents and other evidence.

(Emphasis added.) *Cf.* MANUAL M21–1, Part III, para. 1.03a ("VA is not required to carry to full adjudication a claim which is not well grounded. *Before* a decision is made about a claim being well grounded, it will be *fully developed.*" (emphasis added)). In the midst of this confusion concerning claims, claimants, beneficiaries, and the erroneous allocation of the burden of proof, MANUAL M21–1, Part VI, para. 2.10f creates a new category of potentially well-grounded claims: A "potentially plausible on a factual basis" claim.

To compound this already murky MANUAL M21–1 problem, the appellant has raised this issue for the first time in her reply brief. That is contrary to rule 28(a)(3) of the Court's Rules of Practice and Procedure which requires a statement of the issues in the appellant's brief. The Court notes that the appellant's brief was filed on May 27, 1997, long after the effective date of MANUAL M21–1, Part VI, para. 2.10f and Part III, para. 1.03a. Given the procedural posture of this case, the Court declines to address the applicability of MANUAL M21–1, Part VI, para. 2.10f. Our declination is also based on the belief that the Acting Secretary, the Board, and the General Counsel ought first to address the issue; then, if necessary, the Court can review the question.

### III. CONCLUSION

For the reasons stated above, the BVA's September 24, 1996, decision is AFFIRMED.