﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 190827-56034
DATE: December 31, 2020

ISSUE

Entitlement to service connection for cause of death.

ORDER

Entitlement to service connection for cause of death is denied.

FINDING OF FACT

1. The Veteran’s records placed him at Royal Thai Air Force Base (RTAFB) U-Tapao from April 1969 to September 1969, but his records do not indicate duties at or near the air base perimeter which subjected him to exposure to herbicide agents, and thus there is no presumption that he was exposed to herbicide agents while serving on active duty.

2. The Veteran died in April 2016 and the cause of death as listed on his death certificate was cardiac arrhythmia contributed by hypotension and multiple myeloma.

3. The preponderance of the evidence shows that the Veteran’s cardiac arrhythmia, hypotension and multiple myeloma were not manifest during active service and are not shown to be causally or etiologically related to an in-service event, injury, or disease.

CONCLUSION OF LAW

1. The Veteran's cardiac arrhythmia, hypotension and multiple myeloma were not incurred as a result of active duty service, nor may the disorders be presumed to have been incurred in service. 38 U.S.C. §§ 1101, 1110, 1113, 1116, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for the cause of the Veteran's death are not met. 38 U.S.C. §§ 1101, 1310, 5107; 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.312.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Air Force from July 1966 to April 1970. The Veteran died in April 2016. The appellant is his surviving spouse. 

This case is being reviewed according to the appellate process set forth under the Veterans Appeals Improvement and Modernization Act of 2017 (hereinafter the “Appeals Modernization Act” (AMA)). This law creates a new framework for Veterans dissatisfied with Veteran’s Affairs (VA) decision on their claim to seek review.

This matter comes on appeal before the Board of Veterans’ Appeals (Board) from a June 2019 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). The apellant submitted a Decision Review Request to the Board in August 2019 and selected the Direct Review option by a Veterans Law Judge. Under the Direct Review Docket, the Board is prohibited from considering evidence submitted after the initial June 2019 rating decision. 

Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5109; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

For a claim of service connection for the cause of the Veteran's death, 38 U.S.C. § 5103 (a) notice must be tailored to the claim. Hupp v. Nicholson, 21 Vet. App. 342 (2007), rev'd on other grounds sub nom. Hupp v. Shinseki, 329 F. App'x 277 (Fed. Cir. 2009). The notice should include: (1) a statement of the conditions, if any, for which a veteran was service connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a cause of death claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a cause of death claim based on a condition not yet service connected. Hupp v. Nicholson, 21 Vet. App at 352-53.

Here, the Board finds that the appellant was provided with the relevant notice through letters sent to the Veteran in August 2014 and September 2014. The appellant has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). Thus, VA has satisfied its duty to notify the appellant and had satisfied that duty prior to the adjudication of the claim. Overton v. Nicholson, 20 Vet. App. 427 (2006) (Veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore any notice error was harmless). 

VA also has a duty to assist an appellant with the development of facts pertinent to the appeal. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159 (c). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159 (c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159 (c)(1).

The claims file contains the Veteran's available service treatment records, reports of post-service treatment, and the lay statements from the Veteran and appellant's in support of the claim. The VA has also attempted to verify the Veteran’s alleged herbicide exposure. Specifically, in August 2014 the RO informed the Veteran that more information was needed to substantiate his claim and requested that he provide any evidence of his service in Vietnam or his job in service that exposed him to herbicides. In October 2014 the Veteran provided a statement explaining his contention of how he was exposed to herbicides. Pursuant to the duty to assist the RO made efforts to verify this exposure, including sending a Defense Personnel Records Information Retrieval System (DPRIS) request in May 2019. A June 2019 memorandum from the Joint Service Records Research Center (JSRRC) indicated that there was insufficient information provided to research the request, as the request did not include the Veteran’s unit assignment, time period he served in the unit and circumstances surrounding his exposure to Agent Orange. No further information in reference to the Veteran’s possible exposure to herbicides was provided by the appellant. 

In a December 2020 Informal Hearing Presentation (IHP) the appellant, through her representative, has argued that VA has failed to satisfy its duty to assist as the June 2019 JSRRC results were not clear and understandable to the appellant. The Board notes nonetheless that VA has satisfied its duty to assist the appellant in the development of the claim by fulfilling its duty to seek and assist in the procurement of relevant records. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. Here, the appellant has not identified any additional, relevant, available evidence. Therefore, the Board concludes that VA has made reasonable efforts to obtain all records relevant to the claims. As there is no indication that any additional notice or assistance could aid in substantiating the claims that are the subject of this appeal, VA has satisfied its duties under the VCAA and proceeds with consideration of the Veteran's appeal. 38 U.S.C. § 5103A (a)(2); Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).

Neither the appellant nor her representative has advanced any additional procedural arguments in relation to VA's duty to notify and assist. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015) (holding that "absent extraordinary circumstances we think it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran").

As VA satisfied its duties to notify and assist, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C. §§ 5103, 5103A, or 38 C.F.R. § 3.159, and that the appellant will not be prejudiced as a result of the Board's adjudication of her claims.

Legal Criteria for Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection may also be granted for disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

A veteran who, during active military, naval, or air service, served in the Republic of Vietnam between January 9, 1962 and May 7, 1975 is presumed to have been exposed to an herbicide agent if a listed chronic disease manifests to a degree of 10 percent disabling or more, unless there is affirmative evidence to the contrary. 38 C.F.R. § 3.307 (a). The presumption is rebuttable. 38 C.F.R. § 3.307(d). Additionally, if a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases are presumed to be service connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of the disease during service. See 38 U.S.C. § 1116; 38 C.F.R. § 3.309(e).

The diseases associated with herbicide exposure for purposes of the presumption include diabetes mellitus type II, also known as adult-onset diabetes mellitus; ischemic heart disease, including coronary artery disease, multiple myeloma and certain types of neuropathy. 38 U.S.C. § 1116(a)(2); 38 C.F.R. § 3.309(e); see 78 Fed. Reg. 54763 (Sept. 6, 2013). If the veteran was exposed to an herbicide agent (to include Agent Orange) during active service, those presumptive diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied.

In May 2010, VA published a Compensation & Pension (C&P) Service Bulletin that established "New Procedures for Claims Based on Herbicide Exposure in Thailand and Korea." In explaining the need for the new procedures, the bulletin acknowledged that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes.

In August 2015, the M21-1MR manual provisions relating to claimed herbicide exposure in Thailand were rescinded and replaced with new M21-1 provisions, and were thereafter subject to additional revision. The current version of M21-1, Part IV., Subpart ii., Chapter 1., Section H., Topic 5., paragraph b., provides that for veterans who served during the Vietnam Era in the U.S. Air Force in Thailand at one of the listed Royal Thai Air Force Bases (RTAFBs), U-Tapao, as a security policeman, security patrol dog handler, member of the security police squadron, or "otherwise near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence,... concede herbicide exposure on a direct/facts-found basis." (Emphasis added). This allows for presumptive service connection of the diseases associated with herbicide exposure. See 38 C.F.R. § 3.309(e).

Where the evidence does not warrant presumptive service connection, a veteran is not precluded from establishing service connection for disability due to exposure to herbicides with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1041 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure.

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154(a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran's lay statements. Id. Further, a negative inference may be drawn from the absence of complaints or treatment for an extended period. Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

After the evidence is assembled, it is the Board's responsibility to evaluate the entire record. See 38 U.S.C. § 7104(a) (2012). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C. § 5107 (2012); 38 C.F.R. §§ 3.102, 4.3 (2017).

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the United States Court of Appeals for Veterans Claims (Court) stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Service Connection for Cause of Death

Service connection for the cause of a Veteran's death is warranted if a service-connected disability either caused or contributed substantially or materially to the cause of the Veteran's death. 38 C.F.R. § 3.312(a). To establish service connection for the cause of a Veteran's death, competent evidence must link the fatal disease to a period of military service or an already service-connected disability. 38 U.S.C. § 1310; 38 C.F.R. §§ 3.303, 3.312; Ruiz v. Gober, 10 Vet. App. 352 (1997).

In order to establish service connection for the cause of a Veteran's death, the evidence must show that a disability incurred in or aggravated by active service was the principal or contributory cause of death. A service-connected disability will be considered as the principal, or primary, cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b).

Contributory cause of death is inherently one not related to the principal cause. In order to constitute the contributory cause of death it must be shown that the service-connected disability contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1); Lathan v. Brown, 7 Vet. App. 359 (1995); see also Gabrielson v. Brown, 7 Vet. App. 36, 39 (1994).

Medical evidence is required to establish a causal connection between service or a disability of service origin and the Veteran's death. See Van Slack v. Brown, 5 Vet. App. 499, 502 (1993).

The key question in this case is whether the late Veteran is entitled to a presumption of exposure to herbicide agents, including Agent Orange, based on service in Thailand during the Vietnam era. If so, service connection for his diagnosed multiple myeloma may be granted on the basis that it is a disease presumed to be the result of in-service herbicide agent exposure. 

1. Entitlement to service connection for cause of death 

Herbicide Agent Exposure

The Veteran died in April 2016 and the cause of death as listed on his death certificate was cardiac arrhythmia contributed by hypotension and multiple myeloma. The appellant seeks service connection for cause of death the Veteran in this case for exposure to herbicide agents, to include Agent Orange, while stationed at RTAFB U-Tapao from April 1969 to September 1969. The appellant’s assertions include that the Veteran’s military occupational specialty (MOS) as a jet engine mechanic located on RTAFB U-Tapao during the period in question, placed him in locations to where he was exposed to herbicide agents.

Regarding the Veteran’s Thailand service, the Board notes the presence of service personnel records that place the Veteran at RTAFB U-Tapao from April 1969 to September 1969. entries in the Veteran’s personnel records also identify his MOS as a jet engine mechanic for the period in question.

The Board finds the evidence of the Veteran’s service at RTAFB U-Tapao to be competent and credible. However, the Board also notes that the Veteran was a jet engine mechanic and was not assigned to or performed any aspect of security around the base perimeter. Furthermore, the Veteran’s records do not place him near the U-Tapao base perimeter on any regular or periodic or even isolated basis involving any kind of duty. The Board also notes, as stated above, based on a lack of information, the JSRRC was unable to research and verify the Veteran’s claimed service locations and duties that would place him near the base perimeter. Therefore, the Board finds that the Veteran’s duties did not bring him near the base perimeter, failing to satisfy the guidance found in the M21-1MR: “near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence.” (Emphasis added). On this evidence, the Board cannot concede herbicide exposure on a facts-found basis and consistent with the policy outlined in M21-1MR IV.ii.1.H.5.b.

The Board thus finds that the Veteran served at RTAFB U-Tapao during the time claimed but did not serve in security duties or any other duty in or near the base perimeter, and therefore cannot be considered to have been exposed to herbicide agents for the purposes of VA laws and regulations for his Thailand service. The Board thus cannot concede exposure to herbicide agents. See 38 U.S.C. § 1116; 38 C.F.R. § § 3.307(a), 3.309(e). The Veteran’s records do not indicate any other possible method of exposure to herbicide agents during the Veteran’s entire period of active service from July 1966 to April 1970 other than that discussed above.

Direct Service Connection 

As noted previously, where the evidence does not warrant presumptive service connection, a veteran is not precluded from establishing service connection for disability due to exposure to herbicides with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1041 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure.

Here, a March 2011 treatment note from the Veteran’s private medical provider is the first mention of cardiac arrythmia. The Veteran’s claim file is silent for the mention of hypotension or multiple myeloma prior to the diagnosis at the Veteran’s time of death. These diagnoses do satisfy the requirement of a current disability in the Veteran's claim for service connection. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection could still be established with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). To that end, the Board has considered whether there is otherwise a direct link between the Veteran's cardiac arrhythmia, hypotension or multiple myeloma and active service. His service treatment records make no mention of cardiac arrhythmia, hypotension or multiple myeloma, and he or his appellant have also not alleged that any of these conditions had an onset in service. The record first notes a diagnosis of cardiac arrythmia in March 2011 -- some 41 years after his separation from active duty service. The passage of many years between discharge from active service and the medical documentation of a claimed disability is a factor that tends to weigh against a claim for service connection. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000); Shaw v. Principi, 3 Vet. App. 365 (1992).

Moreover, there is no probative medical evidence or medical opinion suggesting that there may be an association between cardiac arrhythmia, hypotension or multiple myeloma and any incident of the Veteran's service. 

Although lay persons are competent to provide opinions on some medical issues, the specific disabilities in this case, cardiac arrhythmia, hypotension and multiple myeloma, fall outside the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Diagnosing cardiac arrhythmia, hypotension and/or multiple myeloma requires specialized training and medical diagnostic testing for a determination as to diagnosis and causation and is not susceptible of lay opinions on etiology. Therefore, the Board finds that the appellant's and other lay statements of record cannot be accepted as competent evidence sufficient to establish service connection for cardiac arrhythmia, hypotension or multiple myeloma. 

(Continued on next page.)

Therefore, while the Board acknowledges that the Veteran was diagnosed with cardiac arrhythmia, hypotension and multiple myeloma at the time of his death, there is no indication of any diagnosis during service and not until several years after separation and there is no competent evidence to tie the disabilities to any in-service disease or injury. The Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for cardiac arrhythmia, hypotension and multiple myeloma as cause of death. Consequently, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

 

 

Michael A. Pappas

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Nettey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.